R.J. Russo Trucking & Excavating, Inc., Appellant, v Pennsylvania Resource Systems, Inc., et al., Defendants, and General Insurance Company of America, Respondent.

Third Department, July 18, 1991

240

[redacted]

## APPEARANCES OF COUNSEL

*McCabe & Mack (Paul Caltagirone, Richard A. Mitchell* and *Lance N. Portman* of counsel), for appellant.

*Hart & Hume (Benjamin D. Lentz* and *Peter Reiser* of counsel), for respondent.

OPINION OF THE COURT

LEVINE, J.

In December 1984, defendant Dutchess County Resource Recovery Agency (hereinafter the Agency), a public benefit corporation, contracted with defendant Pennsylvania Resource Systems, Inc. (hereinafter PRS) for the design, construction and operation of a resource recovery facility to be located in the City of Poughkeepsie, Dutchess County. In conjunction with that contract and pursuant to the requirements of State Finance Law § 137, defendant General Insurance Company of America (hereinafter General), as surety, issued a labor and material payment bond for over $27 million on behalf of PRS, as principal.

In its contract with the Agency, PRS was obligated to provide for the removal of all residue ash, ferrous metals and oversized municipal solid waste from the resource recovery facility when operating at full plant capacity. In October and December 1987, PRS entered into two separate subcontracts with plaintiff for the hauling and disposal of those waste materials for continuous periods ending July 1, 1988. Under the terms of these agreements and in accordance with the obligation of PRS in its contract with the Agency, plaintiff agreed to provide and have available sufficient heavy hauling equipment to remove and transport the facility's output of residual waste materials operating at full capacity. The rate of payment for plaintiff's haulage and disposal service was set at $88 per ton. The agreements also provided for guaranteed minimum tonnages for plaintiff to remove and dispose of daily and for the life of each contract. Plaintiff's averment was uncontradicted that the guarantees of minimum haulage were given in consideration of plaintiff's obligation to have available at all times sufficient equipment and personnel to meet the waste residue removal requirements of the plant operating at full capacity and, thus, to keep in reserve a given number of drivers and equipment daily despite the fact that they were often not needed to meet the facility's actual disposal requirements.

At the completion of the two contracts, the demand for plaintiff's waste disposal services ultimately proved to be substantially less than the guaranteed minimums provided in

both contracts. Nonetheless, it is undisputed that plaintiff fully performed its obligations under both contracts, including having ready and available the personnel and equipment to service the waste disposal needs of the resource recovery facility operating at full capacity. When PRS failed to pay plaintiff's invoices, plaintiff brought the instant action against PRS, the Agency and General seeking, *inter alia,* payment of the full amount due for its services at the rate of $88 per ton for the guaranteed minimums under the contracts, plus interest from the date of demand (the first and second causes of action), and against PRS and General for damages to a tractor allegedly the responsibility of PRS under the December 1987 agreement (the third cause of action). Liability was asserted against General on the foregoing causes of action as the surety for PRS under the payment bond.

General purportedly paid plaintiff at the contract rate for the actual tonnage of waste materials that plaintiff had removed and disposed of during the life of the contracts and then moved for partial summary judgment dismissing plaintiff's first, second and third causes of action against it. General's ground for dismissal of plaintiff's claims against it for the balances due under the guaranteed minimum haulage provisions of both contracts was that the balances constituted payments for *not* performing services in connection with the public improvement. As such, the balances represented plaintiff's profits guaranteed by PRS under the agreements. To be sure, the balances due under the guarantees were recoverable from PRS as breach of contract damages for lost profits. However, General argued that, as surety, it was not liable for such damages because a public works payment bond under State Finance Law § 137 only insures compensation for work or materials actually furnished to the public improvement. On the same theory, General also contended that the payment bond did not cover liability for damage to plaintiff's equipment caused by PRS, as claimed in plaintiff's third cause of action. Plaintiff cross-moved for partial summary judgment on the same causes of action as to liability and for an inquest to assess damages. Plaintiff also moved for partial summary judgment fixing General's liability for interest on the amounts General previously paid on the contracts.

Supreme Court agreed with General's position that plaintiff's claims under the guarantees were for lost profits not recoverable under a payment bond issued pursuant to State Finance Law § 137. However, the court held that because the

bond did extend General's undertaking to pay for labor or materials "used or reasonably required for use" in the performance of the contracts, plaintiff should recover under the bond for its costs of performing its obligation to have equipment and personnel available even when not actually needed to haul the facility's residual waste materials. The court also ruled that the bond and State Finance Law § 137 did not authorize payment by General for physical damage to rental equipment of a subcontractor and, accordingly, granted dismissal of plaintiff's third cause of action. Finally, the court denied plaintiff's cross motion as to interest on the admittedly valid claim for payment for the waste materials actually removed. This appeal by plaintiff ensued.

■■ In our view, Supreme Court was correct in recognizing that the personnel and equipment that were held in reserve by plaintiff to meet its obligations under the contract constituted labor and materials furnished in performance of a public improvement contract and, hence, were covered by General's payment bond. The court erred, however, in ignoring the contracts' terms for compensating plaintiff through the guarantees of minimum tonnage and substituting therefor a recovery essentially based upon quantum meruit. In so ruling, Supreme Court relied heavily upon the decision in *Olive Co. v United States ex rel. Marino* (297 F2d 70), wherein the court rejected a subcontractor's claim for lost profits against a payment bond issued pursuant to the Miller Act (40 USC § 270a *et seq.)* for a Federal public works project. We agree that Federal Miller Act decisions are of precedential value, inasmuch as State Finance Law § 137 was modeled after the Miller Act *(see,* mem of Law Rev Commn, 1964 NY Legis Ann, at 246-247). However, in the *Olive Co.* case, the lost profits sought by the subcontractor were on the *unperformed* portion of the contract terminated by the general contractor's breach. The court concluded that lost profits on unperformed work were not within the coverage of the bond, which only insured payment for work and materials contributing to performance of a public works contract.

The instant case is readily distinguishable. Here, undisputably, plaintiff has fully performed its obligations under the contracts with PRS and, as Supreme Court held, plaintiff's actions in having equipment and drivers available at all times when needed contributed to the performance by PRS of the public improvement contract *(see, United States ex rel. Mississippi Rd. Supply Co. v H.R. Morgan, Inc.,* 542 F2d 262, 269,

*cert denied* 434 US 828). On plaintiff's uncontested proof, the guarantees of minimum demand for plaintiff's services represented the consideration for the availability of plaintiff's personnel and equipment. Thus, the guarantees constituted an expenditure necessary for the performance by PRS of its contract with the Agency and was clearly within the contemplation of the parties. The guarantees were therefore properly enforceable against General on the payment bond *(see, United States ex rel. Carlisle Constr. Co. v Coastal Structures,* 689 F Supp 1092, 1098). Presumably, in the absence of the guaranteed minimums in the contracts the unit price for plaintiff's services would have been higher. Thus, General benefited from the guarantees, and this also justifies their recovery under the payment bond *(see, supra; see also, United States ex rel. Llewellyn Mach. Corp. v National Sur. Corp.,* 268 F2d 610, 611, *cert denied* 361 US 914).

There is no good reason to deny plaintiff, as the fully performing party, enforcement against General, as the surety, of all the payment terms of its agreements with PRS, including the guarantees and irrespective of whether a substantial portion of General's liability represents a profit to plaintiff. Indeed, it has been held that an agreement whereby a subcontractor was to be paid entirely through a share of profits of the contractor was enforceable against the surety on a payment bond.

"When the parties agree that a subcontractor's compensation shall be contingent on the existence of profits, the surety, of course, is not liable to the subcontractor if the undertaking is unprofitable. * * * But here, the parties acknowledge that [the contractor's] contracts with the government returned a profit. Under these circumstances, [the subcontractor] is entitled to recover the 'sums justly due.' 40 U.S.C. § 270b. This amount must be determined by reference to the subcontract. * * *

"A surety is liable for the subcontract price, unless it was fixed by collusion, fraud or overreaching. * * * Consequently, the surety is obligated to pay the compensation to which the parties have agreed, although this amount exceeds the cost of labor, materials, and overhead. * * * These principles establish that [the surety] is not exonerated simply because [the contractor] and [the subcontractor] agreed that [the subcontractor's] compensation would be measured by a share of the profits rather than a fixed or unit price" *(United States ex rel.*

*Woodington Elec. Co. v United Pac. Ins. Co.*, 545 F2d 1381, 1383-1384).

■ Under the same reasoning, Supreme Court erred in granting dismissal of plaintiff's third cause of action against General, seeking reimbursement for repairs to a damaged yard tractor plaintiff rented to PRS under the December 1987 agreement at "net cost" to plaintiff. The payment bond expressly covered renting equipment. The agreement further provided that "PRS will reimburse [plaintiff] for the net cost of repairs" should plaintiff's equipment be damaged by PRS operators. Obviously, the promise of PRS to pay for damage to the tractor caused by its employees formed part of the consideration for the "net cost" rental. Thus, again, the claim arises out of a contract provision beneficial to the surety and should, therefore, be recoverable under the bond *(see, United States ex rel. Llewellyn Mach. Corp. v National Sur. Corp., supra,* at 611).

■ Finally, we find that Supreme Court also erred in applying General Obligations Law § 7-301 to bar plaintiff's application for a judgment awarding interest on the amount General theretofore paid on plaintiff's claim. Plaintiff's entitlement to interest was governed instead by State Finance Law § 137 (4) (c), which specifically provides that a judgment in favor of a subcontractor or material supplier against the surety "may include provision for the payment of interest upon the amount recovered from the date when demand for payment was made". Accordingly, the denial of plaintiff's application regarding interest was in error and there should be a remittal for consideration of the merits of that application.

MAHONEY, P. J., CASEY, WEISS and HARVEY, JJ., concur.

Ordered that the order is modified, on the law, with costs to plaintiff, by reversing so much thereof as (1) granted the motion of defendant General Insurance Company of America and awarded said defendant summary judgment dismissing plaintiff's third cause of action, and (2) denied plaintiff's application for judgment awarding interest; grant in full plaintiff's cross motion for partial summary judgment on liability against said defendant on plaintiff's first, second and third causes of action and for an inquest to assess damages thereon; and, as so modified, affirmed.