■ CONESCO INDUSTRIES, LTD., Respondent, v ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Appellant. (And Another Related Action.) [619 NYS2d 865] —Crew III, J. Appeals from two judgments of the Supreme Court (Plumadore, J.), entered June 16, 1993 in Fulton County and June 25, 1993 in Franklin County, upon two decisions of the court in favor of plaintiff.

These actions involve two public construction projects, one in the Town of Chateaugay, Franklin County (hereinafter the Chateaugay project) and the other in the Town of Johnstown,

Fulton County (hereinafter the Johnstown project). Defendant's principal, U.W. Marx, Inc. (hereinafter Marx), was the general contractor for both projects, and defendant, as surety, issued a labor and material bond on behalf of Marx for the projects in accordance with State Finance Law § 137. Easton Industries, Inc. (hereinafter Easton) subcontracted with Marx for the concrete work on each project and plaintiff, in turn, entered into two leasing agreements with Easton for the rental of concrete forming equipment.

Following execution of the leasing agreements, plaintiff began supplying equipment and materials to Easton for each of the aforementioned projects. On or about June 5, 1990 plaintiff was advised by Easton that it no longer was working on the projects, and by letter dated June 6, 1990 plaintiff notified Marx that Easton owed plaintiff $10,701.50 for the Chateaugay project and $23,342.27 for the Johnstown project. Plaintiff subsequently filed mechanic's liens for the Chateaugay and Johnstown projects; specifically, plaintiff filed a lien against Easton in the amount of $10,701.50 with respect to the Chateaugay project and two liens against Easton with respect to the Johnstown project totaling $38,334.43. Defendant was notified of such liens on or about July 17, 1990. Plaintiff thereafter made additional claims for the Johnstown project, bringing the total to $72,391.38.[1]

When Marx failed to pay plaintiff's invoices, plaintiff commenced these actions seeking to recover against defendant as surety. Plaintiff moved for partial summary judgment on the issue of liability in both actions. Supreme Court granted the motions but on appeal this Court reversed, finding that the lease agreements between plaintiff and Easton were ambiguous as to the rental terms and required extrinsic evidence to determine the amount due and owing to plaintiff (see, 184 AD2d 956).

A consolidated trial followed, at which Supreme Court first heard testimony and received evidence relative to the Chateaugay project. At the conclusion of this proof, Supreme Court found that Easton agreed to rent equipment and materials from plaintiff at 7% of the list price and that plaintiff had stated its claim with substantial accuracy as required by State Finance Law § 137 (3). As a result, Supreme Court awarded plaintiff $10,701.50, plus interest. Supreme Court then heard

---

1. Although the letters accompanying the additional claims make reference to the Chateaugay project, the relevant invoices refer to only the Johnstown project.

proof as to the Johnstown project, at the conclusion of which Supreme Court again found that the 7% of list price was the agreed upon rental figure. After concluding that plaintiff had stated its claim as to this project with substantial accuracy, Supreme Court awarded plaintiff $72,391.38, plus interest.[2] These appeals by defendant followed.

Initially, we reject defendant's contention that Supreme Court erred in finding that the rental rate for the equipment and materials supplied by plaintiff to Easton for the subject projects was 7% of the list price of such items. Although the testimony on this point was conflicting, resolution of credibility issues lies within the sound discretion of the trial court *(see generally, Verrilli v Verrilli,* 172 AD2d 990, 991-992, *lv denied* 78 NY2d 863). Additionally, although there is documentary evidence in the record tending to support defendant's claim that the agreed upon rate was $0.70 per square foot of equipment, the actual invoices billed (and in some instances paid) plainly reflect the 7% rental figure. Based upon our review of the record as a whole, we are of the view that Supreme Court's finding that the rental rate was 7% of the list price of the items supplied is supported by the weight of the credible evidence and, as such, will not be disturbed.

Nor are we persuaded that plaintiff failed to state its claim with substantial accuracy as required by State Finance Law § 137. The thrust of defendant's argument on this point is that the claims for the respective projects contain certain billing errors and other mathematical miscalculations. As to the asserted mathematical errors, we are of the view that the documentary evidence in the record demonstrates that the figures supporting plaintiff's claims are substantially accurate. With respect to defendant's contention that certain items should not be included in plaintiff's claim, e.g., equipment rentals after Easton gave notice that it no longer was working on the projects and charges for certain materials referenced to the Chateaugay project that actually related to the Johnstown project *(see,* n 1, *supra),* the record supports the inclusion of such items in plaintiff's respective claims. Specifically, with respect to the equipment rentals, there was testimony that Marx continued to use plaintiff's equipment after Easton left the job. As the proof at trial substantiated the amounts claimed by plaintiff for the two projects, we see no reason to disturb Supreme Court's determination in this regard.

Defendant next contends that it should not be held liable

---

2. Plaintiff also was awarded counsel fees in both actions.

for costs other than strict rental costs. Again, we cannot agree. In accordance with the lease agreement, Easton agreed to pay for freight costs, cleaning and repair costs, service charges and unreturned equipment. As plaintiff's claim for such items arises out of contract provisions benefiting defendant, as surety, such items should be recoverable under the bond (see, Russo Trucking & Excavating v Pennsylvania Resource Sys., 169 AD2d 239, 244-245).

Finally, although we have no quarrel with Supreme Court's decision to award interest on the amount recovered by plaintiff under the bond, we agree with defendant that the award of counsel fees was inappropriate. State Finance Law § 137 (4) (c) provides, in relevant part, that in an action such as this "the court may determine and award reasonable attorney's fee[s] to either party * * * when, upon reviewing the entire record, it appears that either the original claim or the defense interposed to such claim is without substantial basis in fact or law". Based upon our review of the record as a whole, we cannot say that the defenses asserted by defendant, although ultimately unsuccessful, were without a substantial basis in law or fact and, as such, the respective judgments must be modified accordingly. Defendant's remaining arguments have been examined and found to be unpersuasive.

Mikoll, J. P., Mercure and Yesawich Jr., JJ., concur. Ordered that the judgments are modified, on the law, without costs, by reversing so much thereof as awarded plaintiff counsel fees, and, as so modified, affirmed.