[628 NYS2d 746]

Scaccia Concrete Corp., Respondent, v Hartford Fire Insurance Company, Appellant.

Second Department, June 19, 1995

APPEARANCES OF COUNSEL

*Nicholas J. Damadeo, P. C.,* Plainview, for appellant.

*Vincent A. Deiorio,* White Plains *(Lewis P. Trippett* of counsel), for respondent.

OPINION OF THE COURT

BALLETTA, J. P.

State Finance Law § 137 (4) (b) provides, in part, that any action by a subcontractor to recover on a labor and material payment bond issued under the statute must be commenced within one year after final payment to the subcontractor became due. A bond which was not issued under the statute, i.e., a "common-law" bond, will, at times, provide for a longer limitations period within which a subcontractor may commence an action to recover on the bond. In effect, the provisions of a "common-law" bond may at times be less onerous than those issued pursuant to State Finance Law § 137, thereby affording the subcontractor greater protection. The distinction is critical in this case since, if the bond in question is one under State Finance Law § 137, the instant action is untimely. However, if the subject bond is not governed by the statute, then the action would be timely. We find that the court properly treated the bond in question here as a common-law bond.

Sometime in 1988, the City of New York awarded a construction contract to Gemma Construction Co., Inc. (hereinafter Gemma), which, in turn, subcontracted the concrete work to New Superior Construction Corp. The plaintiff, Scaccia Concrete Corp., allegedly supplied $443,738.79 worth of concrete to New Superior during the period from November 1988 through September 1989, of which New Superior only paid $221,713.67, leaving a balance due of $222,025.12. The final payment to the plaintiff became due and owing sometime in the last quarter of 1989, and, although the plaintiff provided New Superior with a letter on December 1, 1989, stating that it had been paid in full, the plaintiff commenced the instant action on February 7, 1992, to recover the alleged unpaid balance of $222,025.12.

Under the terms of the contract between the City and Gemma (specifically, Paragraph A of Section No. 15 of the Information for Bidders), Gemma was required to provide: "An executed bond in an amount equal to one hundred

percent (100%) of the contract price, as security for the payment of all persons performing labor or furnishing materials in connection with this Contract, prepared on the forms of bonds authorized by the City of New York, and made a part of the Contract Documents, copies of which are annexed hereto, and having as surety thereunder, such surety company or companies as are approved by the City of New York and are authorized to do business in the State of New York. The premium of such bonds shall be included in the base bid." The approved form for the payment bond was appended to the bid documents.

Gemma obtained the required payment bond from the defendant to secure in part payment for any materials or supplies used by Gemma or any subcontractor in performing the contract.

After the plaintiff commenced the instant action to recover under the bond, the defendant moved for summary judgment dismissing the complaint on the ground that it had not been timely commenced pursuant to the terms and provisions of State Finance Law § 137. The defendant argued that (1) the plaintiff had failed to serve a written notice of claim upon Gemma, the general contractor, within 120 days from the last date it had supplied concrete to New Superior as required by State Finance Law § 137 (3), and (2) the plaintiff had failed to commence the action within one year from the date on which final payment to it became due as required by State Finance Law § 137 (4) (b). The plaintiff countered that since the subject bond contained no reference, either express or implied, to State Finance Law § 137 and, in fact, contained provisions that were contrary to State Finance Law § 137, the bond was not a statutory bond but was merely a common-law bond that had to be read and interpreted according to its written provisions, which, in this instance, provided that all suits were to be commenced within two years after the completion of the contract. The plaintiff argued that since the main contract was completed in May 1990 and final payment made to Gemma in August 1991, the action, which was commenced in February 1992, was timely under the provisions of the bond. The Supreme Court, Queens County, found that the payment bond was "on its face a common-law, rather than a statutory bond".

As of the time of the award of the subject public works contract and the issuance of the subject bond, State Finance Law § 137 ("Bond to secure payment of certain claims arising

from a public improvement; enforcement") read, in relevant part, as follows:

"1. In addition to other bond or bonds, if any, required by law for the completion of a work specified in a contract for the prosecution of a public improvement for the State of New York a municipal corporation, a public benefit corporation or a commission appointed pursuant to law, or in the absence of any such requirement, the comptroller may or the other appropriate official, respectively, shall nevertheless require prior to the approval of any such contract a bond guaranteeing prompt payment of moneys due to all persons furnishing labor or materials to the contractor or his subcontractors in the prosecution of the work provided for in such contract.
* * *

"3. Every person who has furnished labor or material, to the contractor or to a subcontractor of the contractor, in the prosecution of the work provided for in the contract and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was performed or material was furnished by him for which the claim is made, shall have the right to sue on such payment bond in his own name for the amount, or the balance thereof, unpaid at the time of commencement of the action; provided, however, that a person having a direct contractual relationship with a subcontractor of the contractor furnishing the payment bond but no contractual relationship express or implied with such contractor shall not have a right of action upon the bond unless he shall have given written notice to such contractor within one hundred twenty days from the date on which the last of the labor was performed or the last of the material was furnished, for which his claim is made.
* * *

"4. * * * (b) No action on a payment bond furnished pursuant to this section shall be commenced after the expiration of one year from the date on which final payment under the claimant's subcontract became due."

There are very few cases which have involved the particular issue now on appeal—namely, whether a particular payment bond given in connection with a public works contract was a statutory bond (i.e., issued pursuant to State Finance Law § 137) or a common-law bond (i.e., not issued pursuant to State Finance Law § 137)—and most of those cases were decided many years ago.

In *Triple Cities Constr. Co. v Dan-Bar Contr. Co.* (285 App Div 299, *affd* 309 NY 665), the Third Department found that a particular bond was a statutory bond given under State Finance Law § 137; and, accordingly, the requirements of State Finance Law § 137 were to be read into the bond. Moreover, once the bond was found to be a statutory one, the mere fact that it may have omitted some of the statutory provisions (e.g., regarding the filing of a notice pursuant to State Finance Law § 137 [3]) did not convert the bond into a common-law bond. Significantly, the Court looked to the intent of the parties as a guide to determining whether the bond was a statutory bond:

"While this is a hard case, we see no escape from the granting of the defendant's motion to dismiss the complaint. The labor and material bond was unquestionably a statutory bond, given pursuant to section 137 of the State Finance Law. The 'whereas' clause of the bond expressly refers to the statute and recites that 'this bond' was required to be given by the Comptroller under the statute. The obligation of the surety under the bond is stated in the precise terms of the statute. As appears from the exhibit annexed to the complaint, the bond was executed upon a standard form prepared by the Comptroller and approved by the Attorney-General immediately after the enactment of the statute in 1938. It is the same form as that which was before the court in *Chittenden Lbr. Co.* v. *Silberblatt & Lasker* (288 N. Y. 396), and which was there treated as a statutory bond.

"As is indicated by the form of the bond prepared by the Comptroller, the draftsman of the statute apparently did not contemplate that the bond would contain anything more than a statement of the obligation of the surety in the language of the statute. It was contemplated that, once a bond had been given in that form pursuant to the statute, the statute would attach and would prescribe the limitations and restrictions governing the rights of laborers and materialmen to claim the benefit of the bond.

" 'Inasmuch as the bond in suit was given pursuant to * * * statute, the statutory text is to be read into the instrument' *(Graybar Elec. Co.* v. *New Amsterdam Cas. Co.,* 292 N. Y. 246, 251) * * *

"We cannot accept the view of the court below that the bond may be construed as a common-law bond, free from the statutory restrictions. It is obvious that it was the intention of

the Comptroller to exact a statutory bond in the form he had prescribed and it is equally clear that it was the intention of the surety company to give such a bond. The plaintiff as a third-party beneficiary cannot claim that the instrument is something different from that which the parties plainly intended it to be. *(Hub Oil Co.* v. *Jodomar,* 176 Misc. 320.)

"It is true that if a public official intends to exact a broader bond than that authorized by the statute and the surety company gives such a bond, it may be upheld as a common-law bond *(Clark Plastering Co.* v. *Seaboard Sur. Co.,* 237 App. Div. 274; *Merchants Mut. Cas. Co.* v. *United States Fidelity & Guar. Co.,* 253 App. Div. 151; cf. *McClare* v. *Massachusetts Bonding & Ins. Co.,* 266 N. Y. 371). But, in this case, the statement in the bond of the obligation of the surety follows the language of the statute precisely. There is no assumption of a broader obligation than the statutory one. The bond omits the provisions of the statute, requiring the filing and enforcement of a mechanic's lien as a condition of the acquisition of rights under the bond, but this omission does not convert the bond into a common-law bond. The bond having been given pursuant to the statute as a statutory bond, the statutory provisions must be read into the bond or, to put it differently, they are operative by force of the statute, and there is no need to recite them in the bond. *(People* v. *Metropolitan Sur. Co.,* 211 N. Y. 107; *Graybar Elec. Co.* v. *New Amsterdam Cas. Co., supra.)"* (285 App Div 299, 303-305, *affd* 309 NY 665, *supra.)*

It should be noted that in *Triple Cities,* the "whereas" clause of the bond specifically stated that the bond was required pursuant to State Finance Law § 137. Similarly, in *Horwitz v American Druggists' Ins. Co.* (112 AD2d 192) and in *Chittenden Lbr. Co. v Silberblatt & Lasker* (288 NY 396, *supra),* the bonds in question specifically referred to the statute and were, therefore, found to be statutory bonds *(see also, Felix Contr. Corp. v Federal Ins. Co.,* 97 AD2d 533, where a bond was a statutory bond since it expressly stated that it had been furnished pursuant to a Connecticut statute; *Kipp Bros. v Hartford Acc. & Indem. Co.,* 63 Misc 2d 788, 789 ["The bond, by its express provisions, incorporates by reference section 137 of the State Finance Law with all of its conditions, provisions and limitations"]).

On the other hand, where the bond has made no reference to the statute, the courts have generally held that it was merely a common-law bond. For instance, in the case of

*Windalume Corp. v Rogers & Haggerty* (36 Misc 2d 1066, 1067-1068), the court held:

"It is significant that the bond issued by the surety here does not comply, in form or content, with the requirements of section 137. The obligations of the principal and surety are not stated in statutory terms, nor does it appear that such bond was executed upon the standard and approved form. Similarly, the bond does not recite that it is required by the State Comptroller under section 137 of the State Finance Law or chapter 707 of the Laws of 1938 (see *Triple Cities Constr. Co. v. Dan-Bar Contr. Co.*, 285 App. Div. 299, 301, affd. 309 N. Y. 665).

"In the opinion of the court, the bond in suit is a common-law bond, rather than a statutory bond * * * Nothing in the bond itself or the contract documents before the court evidences any intent that the provisions of section 137 apply here, or that plaintiff must pursue the procedure prescribed therein as a condition precedent to recovery on such bond".

Similarly, in *Clark Plastering Co. v Seaboard Sur. Co.* (237 App Div 274, 276, *supra),* the Court found the particular bond to be a common-law bond: "There is no doubt that a municipality may require a bond known as a common-law bond, or may insist on a bond required by statute. If a bond is a common-law bond, the contractor may sue upon it, irrespective of whether it complies with the statute or fails to comply therewith. To be enforcible as a statutory bond, it must contain covenants bringing it within the provisions of the statute. This bond contains no such provisions".

In this particular case, neither the bid documents, the public contract, the approved form of bond, nor the payment bond contain any mention of State Finance Law § 137 or any of its provisions. The payment bond herein is more liberal than the statute and contains broader protective terms than the statute. Most notably, it is devoid of any reference of a requirement for notice prior to commencement of a suit and provides that an action on the bond must be commenced within "two years after the complete performance of said contract and final settlement thereof". Thus, under the above case law, it would appear that the bond in question was correctly determined to be a common-law bond.

However, in a case decided in 1993, the Third Department apparently threw out all of the above distinctions and, in a rather broad ruling, essentially held that all bonds issued

after 1985 in connection with local public improvements were statutory bonds. In *Dutchess Quarry & Supply Co. v Firemen's Ins. Co.* (190 AD2d 36, 38-39), the Third Department held:

"State Finance Law § 137 was amended to mandate the furnishing of a labor and materials payment bond on local municipal public works projects such as that undertaken here by the City of Poughkeepsie *(see,* L 1985, ch 137, § 10; *see also,* Mem of sponsoring Senator and Member of Assembly, Bill Jacket, L 1985, ch 137).

"Thus, by the foregoing amendment, the Legislature extended to municipal public works contracts the strong public policy underlying the original enactment of State Finance Law § 137 regarding State public projects, i.e., to provide protection to persons furnishing labor and materials on such projects by guaranteeing payment even where there is no fund or insufficient funds due the general contractor or subcontractor against which a labor or materials lien could be filed * * *

"Prior to the foregoing 1985 amendment to State Finance Law § 137, it was discretionary on the part of a local municipal government whether to require a payment bond and, if so, either a statutory or common-law bond *(see, Triple Cities Constr. Co. v Dan-Bar Contr. Co.,* 285 App Div 299, 304, *affd* 309 NY 665). *By virtue of the 1985 amendment, municipalities no longer have the option to deny persons furnishing labor and materials on local public projects the protection of State Finance Law § 137, or to provide less protection to such persons.* This being so, at least as to the furnishing of labor and materials on public projects covered by State Finance Law § 137, *we are of the view that a labor and materials payment bond cannot dilute the protection of the statute by imposing notice conditions precedent to payment which are more onerous than that required by State Finance Law § 137 (3).* The Federal courts have held, in construing the Miller Act (40 USC § 270a *et seq.),* the model for State Finance Law § 137 *(see, Russo Trucking & Excavating v Pennsylvania Resource Sys.,* 169 AD2d 239, 243), that the purpose of the statutory notice provision is secondary and subordinate to the primary statutory objective of protecting persons furnishing labor and materials on Federal public works projects *(see, United States v Andrews,* 406 F2d 790, 794; *Noland Co. v Allied Contrs.,* 273 F2d 917, 920-921). Thus, *any such more burdensome notice provision having the effect of weakening the financial protection afforded statutory beneficiaries would be void as violative*

*of the public policy* embodied in State Finance Law § 137 as amended" (emphasis added).

Prior to the 1985 amendment referred to by the Court, subdivision (1) of State Finance Law § 137 read as follows: "1. In addition to other bond or bonds, if any, required by law for the completion of a work specified in a contract for the prosecution of a public improvement for the state of New York, or in the absence of any such requirement, the comptroller may nevertheless require prior to the approval of any such contract a bond guaranteeing prompt payment of moneys due to all persons furnishing labor or materials to the contractor or his subcontractors in the prosecution of the work provided for in such contract."

In 1985, subdivision (1) of section 137 was amended to read as follows: "1. In addition to other bond or bonds, if any, required by law for the completion of a work specified in a contract for the prosecution of a public improvement for the state of New York *a municipal corporation, a public benefit corporation or a commission appointed pursuant to law,* or in the absence of any such requirement, the comptroller may *or the other appropriate official, respectively, shall* nevertheless require prior to the approval of any such contract a bond guaranteeing prompt payment of moneys due to all persons furnishing labor or materials to the contractor or his subcontractors in the prosecution of the work provided for in such contract" (emphasis added).

As the language of *Dutchess Quarry & Supply Co. v Firemen's Ins. Co.* (190 AD2d 36, *supra)* indicates, the Third Department has apparently taken the position that since the appropriate official of a municipality "shall" require a bond, then all bonds issued in connection with a municipality's public works contracts are statutory bonds.

However, in *Dutchess Quarry & Supply Co. v Firemen's Ins. Co. (supra,* at 39), the Third Department was confronted with a bond that contained more restrictions on the ability of laborers and materialmen to seek payment than provided for by the statute and stated that the bond could not be more restrictive than the statute ("a labor and materials payment bond cannot dilute the protection of the statute").

In this case, however, the bond is less restrictive than the statute with respect to the providing of notices and the time within which to commence suit. Thus, this case raises the question left open by *Dutchess Quarry & Supply Co. v Fire-*

*men's Ins. Co. (supra);* namely, whether a municipality may require greater protections for laborers and materialmen than provided by State Finance Law § 137.

In *Merchants Mut. Cas. Co. v United States Fid. & Guar. Co.* (253 App Div 151, *supra),* the plaintiff sought to recover on a performance bond issued by the defendant in connection with a public works project of the City of Buffalo. As part of its defense, the defendant argued that neither the Buffalo City Charter nor the city ordinance, under which the bond was issued, authorized the city to require a bond broad enough to include third-party beneficiaries such as the plaintiff. The Fourth Department rejected that argument, stating that not only was the subject bond provision in compliance with General Municipal Law § 90 but also that "where the surety's promise goes beyond statutory requirements we may give it effect as a common-law obligation" (253 App Div, *supra,* at 155).

Such a view comports with the long-established principle that "[v]oluntary bonds, not being illegal or against the policy of the law, may be good as common-law bonds, although, through some defect, they are not good statutory bonds" *(Carl v Meyer,* 51 App Div 5, 9; *also, City of Mount Vernon v Brett,* 193 NY 276, 287; 11 NY Jur 2d, Bonds, § 1, at 259).

Here, we have a bond that, rather than being contrary to public policy, furthers public policy by providing greater protection to persons furnishing labor and materials for a public works contract. As a common-law bond, it must be enforced in accordance with its terms *(see, Sullivan Highway Prods. Corp. v Edward L. Nezelek, Inc.,* 52 AD2d 986, 987): "Nor does the fact that the notice provision in the bond in question is substantially similar to the one contained in section 137 of the State Finance Law have any relevancy to the interpretation of the bond, under the facts of the present case. The bond involved here was a requirement of the County of Sullivan in its contract with the general contractor, Nezelek. Thus, we may not read into a common-law bond any statutory requirement, but it is to be interpreted independently of any statute" *(see also, Extruded Louver Corp. v McNulty,* 18 AD2d 661).

Accordingly, we conclude that the Supreme Court properly determined that the bond should be enforced as a common-law bond thus securing its broader protections for the benefit of

those who had furnished labor and material in connection with the public works contract involved herein, and the order is affirmed insofar as appealed from, with costs.

ROSENBLATT, THOMPSON and FLORIO, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, with costs.