[752 NYS2d 59]

HARSCO CORPORATION, PATENT CONSTRUCTION SYSTEMS DIVISION, Respondent, v GRIPON CONSTRUCTION CORP., Defendant, and AXA GLOBAL RISKS US INSURANCE COMPANY, Appellant.

Second Department, November 25, 2002

APPEARANCES OF COUNSEL

*Wolff & Samson, P.A.,* New York City (*Armen Shahinian* and *Jonathan S. Bondy* of counsel), for appellant.

*Schnader Harrison Segal & Lewis, LLP,* New York City (*John I. Karesh* and *Benjamin P. Deutsch* of counsel), for respondent.

## OPINION OF THE COURT

O'Brien, J.

This appeal presents the issue of whether the surety on a labor and material bond issued pursuant to State Finance Law § 137 is required to pay for the cost of equipment which was rented by its principal for use on a public improvement project but thereafter was not returned to the supplier.

## I

In October 1998 the Dormitory Authority—State of New York (hereinafter the DASNY) entered into a contract with Gripon Construction Corp. (hereinafter Gripon) for excavation and foundation work on a Queens Hospital Center project. At the same time, Gripon obtained a labor and material payment bond from AXA Global Risks US Insurance Company (hereinafter AXA) as surety in connection with its performance of the DASNY contract. The bond incorporated the contract between Gripon, the principal on the bond, and DASNY, and guaranteed payment for material "used or reasonably required for use in the performance of the Contract." The bond provided that the term "material" was to be construed to include "rental of equipment directly applicable to the Contract." A claimant who furnished material to the principal and was not paid in full could sue on the bond "for such sum or sums as may be justly due."

In order to perform its work on the DASNY contract, Gripon rented concrete forms and shoring equipment from Patent Construction Systems, a division of Harsco Corporation (hereinafter Harsco). The rental agreements entered into in December 1998 and January 1999 provided that Gripon would pay the current sales price for any equipment or component parts which it failed to return.

Beginning in March 1999 Gripon failed to make any further rental payments for the equipment. In August 1999 the DASNY declared Gripon in default in performance of the contract, and AXA signed a takeover agreement with DASNY to complete the contract pursuant to a performance bond.

Harsco learned in October 1999 that Gripon had been terminated from the project and that Harsco's equipment was still being used at the job site. Harsco then advised Gripon to return the equipment. After encountering some difficulty in obtaining the equipment, Harsco informed AXA in December 1999 of its demand for payment of the outstanding rental charges or for the return of its equipment. The equipment was missing when Harsco's drivers went to the job site in January 2000 to retrieve it.

Harsco commenced the action at bar against Gripon and AXA to recover damages based on the labor and material payment bond. The complaint also asserted causes of action to recover damages for breach of contract, unjust enrichment, and conversion. In the fourth cause of action to recover damages under the bond, Harsco sought the principal sum of $179,018.57, which included the sales price of the unreturned equipment and rental charges for the period of February 8, 1999, through October 8, 1999.

Harsco moved for summary judgment on the fourth cause of action, and AXA cross-moved for summary judgment on its affirmative defense that it was not liable for the value of unreturned equipment. The parties thereafter reached an agreement in which AXA agreed to pay Harsco $83,841.46 for the outstanding rental charges. The Supreme Court, in effect, granted summary judgment to Harsco on so much of its fourth cause of action as sought to recover the cost of the equipment which was not returned, and issued a judgment against AXA for the principal sum of $95,177.11. Citing a decision of the Appellate Division, Third Department, *Conesco Indus. v St. Paul Fire & Mar. Ins. Co.* (210 AD2d 596), the Supreme Court concluded that since the claim for the cost of the unreturned equipment arose out of the contract between Harsco and Gripon, that cost was recoverable under the bond.

## II

Pursuant to State Finance Law § 137 (1), issuance of a labor and material payment bond is mandatory on public improvement projects for, inter alia, public benefit corporations such as the DASNY (*see* Public Authorities Law § 1677). Although the text of the bond issued by AXA does not specifically refer to the State Finance Law, it is deemed a bond issued pursuant to the statute and subject to its provisions (*see Legnetto Constr. v Hartford Fire Ins. Co.,* 92 NY2d 275; *Willets Point Asphalt Corp. v R.L.I. Ins. Co.,* 294 AD2d 356). The statutory text is to

be read into the bond (*see Scaffold-Russ Dilworth v Shared Mgt. Group,* 289 AD2d 932).

By enacting State Finance Law § 137, the Legislature intended to supplement the Lien Law and to guarantee payment through a bond to persons furnishing labor and material on public improvement projects even though there are insufficient funds against which a lien could be filed (*see Chittenden Lbr. Co. v Silberblatt & Lasker,* 288 NY 396; *Dutchess Quarry & Supply Co. v Firemen's Ins. Co. of Newark, N.J.,* 190 AD2d 36, 38; *see also Davidson Pipe Supply Co. v Wyoming County Indus. Dev. Agency,* 85 NY2d 281, 285). A bond issued pursuant to State Finance Law § 137 (1) guarantees prompt payment of money due those persons who furnish labor or material to the contractor "in the prosecution of the work provided for in such contract." State Finance Law § 137 (5) (a) provides that the words " 'furnishes material' or other similar expression * * * shall be deemed to include the reasonable rental value for the period of actual use of machinery, tools or equipment." AXA properly conceded its liability on the bond for the rental charges. The question is whether the unreturned equipment should be considered material used in the prosecution of the work. Federal case law provides guidance on this issue.

State Finance Law § 137 is modeled on the Federal Miller Act (40 USC § 270a *et seq.*; *see Specialty Prods. & Insulation Co. v St. Paul Fire & Mar. Ins. Co.,* 287 AD2d 852, *lv granted* 98 NY2d 602), which requires a prime contractor on a federal project to furnish a bond to insure payment to those who supply labor and material for the project (*see F.D. Rich Co., Inc. v United States for Use of Indus. Lbr. Co., Inc.,* 417 US 116). The Miller Act provides an alternative remedy to the mechanic's lien, because a lien cannot attach to government property, and the statute is to be liberally construed (*see United States for Use & Benefit of Conveyor Rental & Sales Co. v Aetna Cas. & Sur. Co.,* 981 F2d 448 [9th Cir 1992]). Miller Act decisions are of precedential value (*see Swing Staging v Hartford Fire Ins. Co.,* 269 AD2d 193; *R.J. Russo Trucking & Excavating v Pennsylvania Resource Sys.,* 169 AD2d 239).

A Miller Act bond applies to material furnished "in the prosecution of the work" provided for in the contract (40 USC § 270b), as does State Finance Law § 137 (1). As a general rule, the term "material" as used in a Miller Act bond encompasses items which are reasonably expected to be consumed or substantially consumed in the performance of the work, but

the term does not include capital equipment which can be removed from the work site and used on subsequent projects (*see United States for Use of Sunbelt Pipe Corp. v United States Fid. & Guar. Co.*, 785 F2d 468 [4th Cir 1986]; *United States for Use & Benefit of J.P. Byrne & Co., Inc. v Fire Assn. of Philadelphia*, 260 F2d 541 [2d Cir 1958]; *Massachusetts Bonding & Ins. Co. v United States, for Use of Clarksdale Mach. Co.*, 88 F2d 388 [5th Cir 1937]; *Transamerica Premier Ins. Co. v Ober*, 894 F Supp 471). In distinguishing material from capital equipment, the focus is on "the degree of expected consumption of the items on the particular job for which they were furnished" (*United States for Use & Benefit of J.P. Byrne & Co., Inc. v Fire Assn. of Philadephia, supra* at 544).

For example, in *Sunbelt Pipe (supra)*, the court held that a supplier of dredging pipe could not recover under a Miller Act bond because such pipe could normally be reused, and the supplier had no reasonable expectation that the pipe would be consumed in the performance of the federal contract. In *Transamerica (supra)*, the court concluded that the Miller Act bond did not cover leased equipment, including a tender boat and barge which were lost at sea, even though the lease required the contractor to assume all risks during towage. The court viewed the issue from the perspective of the reasonable expectation of the supplier and found no indication in the record that the parties anticipated that the loss of the equipment would be expected as a normal incident of the project.

In contrast, in *Massachusetts Bonding (supra)*, the surety was held liable for the cost of the complete overhaul of a number of trucks used on the construction project. The nature of the work was such that considerable damage to the machinery was expected as a normal incident of the project, and, in that sense, the trucks were "consumable material." Similarly, in *J.P. Byrne & Co. (supra)*, the court held that tires sold by the supplier for use on the contractor's heavy earth-moving equipment constituted material which the surety was obligated to pay for under a Miller Act bond, rather than additions to the contractor's capital equipment for which a surety would not be liable. Due to the conditions under which the excavation work was performed, the supplier and the contractor reasonably expected that the tires would be used up in the work under the contract.

Applying these Miller Act precedents, the "material" covered by a State Finance Law § 137 bond encompasses items which the parties reasonably anticipate will be consumed in the

project. The bond would not cover capital equipment which could be used on subsequent projects. This interpretation is consistent with provisions of the state Lien Law.

Lien Law § 2 (12), which tracks the "furnishes material" language of State Finance Law § 137 (5) (a), defines a "materialman" as a person who furnishes material or the use of machinery, tools, and equipment "in the prosecution of such improvement." Lien Law § 2 (12) provides that the phrase "furnishes material" wherever used in the statute includes the reasonable rental value of machinery, tools, and equipment.

In *Plattsburgh Quarries v Palcon Indus.* (111 AD2d 1069, 1070), the Appellate Division, Third Department, interpreted the phrase "furnishing materials" found in Lien Law § 5 as requiring "that the goods provided be expended or used to the extent that they become a part of the construction project" (*see also Matter of P.T. & L. Constr. Co. v Winnick*, 59 AD2d 368). In *Matter of Berlanti Constr. Co.* (198 Misc 543), the court held that machinery parts installed in equipment used at a construction site were not lienable materials under Lien Law § 2 (12) because the parts did not go into or constitute a part of the improvement but were part of the subcontractor's plant and equipment returnable to him for use in other work.

In the case at bar, the Supreme Court did not specifically address the issue of whether the unreturned equipment constituted "material" covered by a labor and material bond. Rather, the court relied on the reasoning in *Conesco Indus. v St. Paul Fire & Mar. Ins. Co.* (210 AD2d 596, *supra*). There the Appellate Division, Third Department, held that a claim for leased concrete shoring equipment, which was not returned to the supplier, was recoverable under a State Finance Law § 137 bond because the claim arose out of rental contract provisions which were ultimately beneficial to the surety. The *Conesco* decision was in turn based on an earlier Third Department case, *R.J. Russo Trucking & Excavating v Pennsylvania Resource Sys.* (169 AD2d 239, *supra*). In *Russo*, the plaintiff entered into a subcontract on a public improvement project in which it was responsible for hauling and disposing of solid waste material from a resource recovery facility. The plaintiff was guaranteed a rate of payment based on hauling and disposing of a minimum tonnage. In consideration for this guaranteed rate, the plaintiff was obligated to have available in reserve sufficient personnel and equipment to meet waste removal requirements when the facility was operating at full capacity. The Court held that the personnel and equipment held in reserve by the

plaintiff to meet its obligations under the contract constituted labor and material furnished in performance of the public improvement contract and therefore were covered by the payment bond issued pursuant to State Finance Law § 137. We agree with the Court in *Russo* insofar as it concluded that the payment required under the bond should be based on the guaranteed minimum tonnage, even though the personnel and equipment may not have been actually used on the project on any given day, because the contract required that they be available for use. In this sense, they were "furnished" for the performance of the contract. We differ, however, with respect to the alternative justification for requiring the surety to pay for the guaranteed minimums. The Court in *Russo* (*supra*) reasoned that the unit price in the contract for the plaintiff's services would have been higher in the absence of the guaranteed minimum, therefore the surety benefited from the guarantee. Since the surety benefited from this term of the contract, it was liable on the bond.

This focus on the presumed benefit to a surety of a contract provision derives in part from a Miller Act case, *United States for Use of Llewellyn Mach. Corp. v National Sur. Corp.* (268 F2d 610 [5th Cir 1959], *cert denied* 361 US 914). In *Llewellyn*, the contractor leased certain equipment and agreed to pay for the loss of the equipment. The equipment was subsequently lost at sea, and the question was whether the bond issued under the Miller Act covered that loss. The Fifth Circuit concluded that the bond covered the loss because the monthly rental payments secured by the bond would have been greater if the risk of loss of the equipment had remained on the supplier. The surety therefore obtained the benefit of having its undertaking based on a monthly rental of a lesser amount.

The dissenting opinion in *Llewellyn* pointed out that the decision appeared to deviate from the general rule as enunciated in the *Massachusetts Bonding* case (88 F2d 388, *supra*), that is, that materials furnished in the prosecution of the work include equipment consumed by the work but not the replacement of capital equipment which could be used on subsequent work. The decision in *Llewellyn* was also criticized in *Moran Towing Corp. v M.A. Gammino Constr. Co.* (363 F2d 108 [1st Cir 1966]), as tending to turn the Miller Act into a federally-required insurance program for government contractors. The *Moran* court stated:

"The fact that the principal might have been required to include in its rental payments a sum sufficient to pay premiums to insure the equipment against casualty losses should not mean that it can cast upon the Miller Act surety responsibility not for a normal premium, but an entirely new type of insurance coverage. It must be remembered that, at least to some extent, the act was intended as a substitute for liens which might otherwise have been claimed against government construction * * * The mere failure of the contractor to perform all the undertakings of his contract has consistently been held not to be a sufficient basis for imposing liability" (363 F2d at 115-116).

We decline to adopt the rule that a surety is liable under a State Finance Law § 137 bond for the value of unreturned rental equipment merely because it benefited from lower rental costs attributable to its principal's assumption of the risk of such loss in a contract. A payment bond issued under State Finance Law § 137 is not intended to insure the supplier of material against every risk accepted by the surety's principal in a contract. "It has been uniformly held that a third-party beneficiary is strictly bound by the terms of the surety's payment bond and that the surety is chargeable only according to the strict terms of its undertaking" (*Lynbrook Glass & Architectural Metals Corp. v Elite Assoc.*, 225 AD2d 525, 526 [citations omitted]). Rather, we conclude that, absent express language to the contrary, the surety on a State Finance Law § 137 bond is obligated to pay only for the unreturned rental equipment which the parties reasonably anticipated would be consumed in the work. Our determination does not preclude Harsco from pursuing other remedies independent of the statutory bond.

## III

The extent of AXA's liability for the unreturned rental equipment, if any, cannot be determined as a matter of law on the evidence presented. According to the invoices in the record, the equipment rented to Gripon included scaffolding as well as fillers, angles, ties, and brackets which are not described in sufficient detail. Harsco alleged in its motion papers that concrete-forming equipment is made up of many components, such as brackets and bolts, and that it was not unusual for some of the components not to be returned at the end of the rental period. A question of fact therefore exists as to whether Harsco and

Gripon, in signing the lease, anticipated that some of the leased equipment would be "consumed" in the project. Accordingly, the judgment should be reversed, and Harsco's motion for summary judgment denied.

In view of our determination, we need not reach AXA's remaining contentions regarding interest and attorney's fees.

Accordingly, the judgment is reversed, on the law, the plaintiff's motion for summary judgment on so much of the fourth cause of action as sought to recover the cost of the unreturned equipment is denied, and the order dated November 29, 2000, is modified accordingly.

SMITH, J.P., McGINITY and TOWNES, JJ., concur.

Ordered that the judgment is reversed, on the law, with costs, the plaintiff's motion for summary judgment on so much of the fourth cause of action as sought to recover the cost of the unreturned equipment is denied, and the order dated November 29, 2000, is modified accordingly.