The **UNITED STATES** of America for the Use of **WHEELING–PITTSBURGH STEEL CORPORATION**, and Wheeling-Pittsburg Steel Corporation in its separate capacity, Plaintiffs,

v.

**ALGERNON BLAIR, INC.,** et al., Defendants.

**Civ. A. No. 70–84.**

United States District Court,
D. South Carolina,
Columbia Division.

Aug. 3, 1971.

Wilburn Brewer, Jr., and Gene V. Pruet, of Cooper, Gary, Nexsen & Pruet, Columbia, S. C., for plaintiffs.

Clinch Heyward Belser, and Jackson L. Barwick, of Belser, Belser & Baker, Columbia, S. C., for Algernon Blair, Inc., and United States Fidelity and Guaranty Co.

No appearance for Phillips Air Devices, Inc.

Claude M. Scarborough, of Nelson, Mullins, Grier & Scarborough, Columbia, S. C., for United Bonding Ins. Co.

Julius W. McKay, of McKay, McKay, Black, Sherrill, Walker & Wilkins, Columbia, S. C., for Aetna Ins. Co.

## ORDER

HEMPHILL, District Judge.

This matter is before the court on the cross motions of the plaintiff and Aetna Insurance Company regarding the fourth defense pled in Aetna's answer. Plaintiff has moved to strike the defense and Aetna for summary judgment upon it.

For the purposes of this motion, the facts are these. J. W. Bateson, Inc. entered a contract with the United States for construction of military barracks. J. W. Bateson entered a subcontract with Phillips Air Devices, Inc. whereby Phillips was to manufacture and install lockers and shelves in the barracks. J. W. Bateson Co., as general contractor, provided the customary Miller Act performance and payment bonds from sureties not parties to this action. J. W. Bateson also required Phillips Air Devices to obtain a subcontract bond. The defendant Aetna Insurance was surety on that bond and it is that bond which is object of the present controversy. In part pertinent to these motions, the bond provided:

> NOW THEREFORE, the condition of this obligation is such * * *
>
> * * * * * *
>
> * * * that if the Subcontractor shall make payment to all claimants for all costs and expenses resulting from the performance of this Subcontract and for all labor and material used or reasonably required for use in the performance of the Subcontract *for all or any part of which the General Contractor or Owner is liable*,

failing which such claimants shall have a direct right of action against the Subcontractor and Surety under this obligation, subject to the General Contractor's priority, and/or the General Contractor shall have the right to bring an action against the Subcontractor and Surety on behalf of unpaid claimants, then this obligation shall be null and void; otherwise, it shall remain in full force and effect * * * [Emphasis Added.]

It is alleged that Wheeling-Pittsburgh Steel Corporation provided Phillips with materials used in the construction of the lockers and shelves and was not paid therefor.

Aetna's defense at issue here is that plaintiff failed to comply with the time for notice and commencement of action requirements of the Miller Act. As a result there is no liability on the part of the general contractor. Therefore the language of the bond, "for all or any part of which the General Contractor or Owner is liable" constitutes a defense to the action. It appears that plaintiff did not give the 90-day notice required by the Miller Act or commence the action against J. W. Bateson within one year. (42 U.S.C.A. § 270b).

It is plaintiff's contention that the underscored language is used to define the type item covered by the bond and to limit the liability of the surety to the same type material and labor for which the subcontractor would have been liable under the Miller Act. Plaintiffs argue that the effect of the clause is simply to distinguish between items bought for incidental use in the performance of the contract, which items would not be consumed, and items to be actually incorporated into the project. Plaintiffs' argument in that regard is strengthened by the procedural limitation included in the bond:

> PROVIDED, HOWEVER, that no suit, action or proceeding by reason of any default whatever shall be brought on this bond after four years from the day on which the final payment under the contract falls due.

Plaintiff argues that if the italicized language were intended to require the perfection of a Miller Act claim in order to create liability on this bond that that requirement would have been included in the paragraph dealing with the time limitation rather than in the paragraph defining the scope of the coverage.

Georgia Code Annotated § 103–103 provides:

> The contract of suretyship is one of strict law, and the surety's liability will not be extended by implication or interpretation.

The contract covered by the present bond was to be performed in Georgia and Aetna argues that Georgia law controls the interpretation of the bond. Because both Aetna and Phillips Air Devices are Connecticut corporations and the bond was executed in Connecticut, it appears to this court that the law of Connecticut is controlling with respect to its interpretation. (*E. g.*, Livingston v. Atlantic Coast Line Railroad Co., 176 S.C. 385, 180 S.E. 343 (1935)). The court, however, is not convinced that its choice of law is of import in this case. The general rule for interpreting language used in a contractor's bond may be stated as follows:

> * * * [I]f the language of the bond is ambiguous or uncertain, it will be construed most strongly against a compensated surety and in favor of the obligees or beneficiaries under the bond, such as the laborers and materialmen for whose benefit it was ostensibly executed. On the other hand, since an ordinary or conventional type of contractor's bond is a simple contract, and since the cardinal rule in the construction of contracts is to ascertain and give effect to the intention of the parties if that can be done consistently with legal principles, the liability of a surety upon such a bond is dependent upon his covenants and agreements. (17 Am.Jur.2d, Contractors' Bonds § 3 (1964)).

Connecticut follows that general rule and explains the decline of the doctrine that

a surety is a favorite of the law and claims against him are considered *strictissimi juris* as follows:

> The equities * * * which might arise in favor of a gratuitous surety does not appertain to corporations engaged in the business of becoming sureties for profit. The law does not have the same solicitude for them. "Although calling themselves sureties, such corporations are in fact insurers." (Citations) Contracts of suretyship are regarded as those of insurance where the surety engages in the business for profit and the rights and liabilities of the parties are governed by the rules applicable to contracts of insurance. State ex rel. Beardsley v. London & Lancashire Indem. Co., 124 Conn. 416, 200 A. 567, 572 (1938).

Notwithstanding the Georgia statute set out above, the Georgia courts recognize that "[a] compensated surety is not a favorite of the law." (Peachtree Roxboro Corp. v. United States Casualty Co., 101 Ga.App. 340, 114 S.E.2d 49, 53 (1960)). In considering a bond similar to the one involved here, the Georgia court stated in the *Peachtree* case:

> Insurance policies are prepared and proposed by the insurers; and, where such a contract is capable of being construed in two ways, that interpretation must be placed upon it which is most favorable to the insured. (114 S. E.2d 49 at 52, quoting from State Mutual Life Insurance Co. v. Forrest, 19 Ga.App. 296, 91 S.E. 428 (1917)).

The apparent conflict between the Georgia case and the statute may be resolved by the rule as stated in Greenville Airport Commission v. United States Fidelity and Guaranty Co., 226 S.C. 553, 86 S.E.2d 249, 252 (1955):

> The rule that the contract of a "voluntary" or "accommodation" surety is to be construed strictissimi juris, all doubts and technicalities being resolved in his favor, has no application to the contract of a surety company acting for compensation; as to the latter, doubts are to be resolved against the

surety and in favor of the indemnity. [Citations omitted.] But this means only that the contract of a paid surety is to be construed most strongly against the surety in favor of the indemnity which the obligee has reasonable grounds to expect. It does not mean that the bond of a compensated surety is to be so construed as to extend liability beyond the terms of the contract, or as to nullify the plain intention of the parties. [Citations omitted.]

The court considers that language a fair statement of both the Georgia and Connecticut rules of construction of contractors' bonds.

In support of its motion for summary judgment, Aetna submitted the affidavit of the officer of Bateson Co. who prepared the bond form provided Phillips by J. W. Bateson. The affiant stated:

[5] The Payment and Performance Bond executed by Phillips Air Devices, Inc. and Aetna Insurance Company was on a bond form used by the J. W. Bateson Company, Inc. since February 14, 1962 at which time J. W. Bateson Company, Inc.'s bond form was changed for the purpose of limiting the Third-Party Claimants direct right of action against the subcontractor and surety under said bond to those claims for which J. W. Bateson Company, Inc. would actually be liable. J. W. Bateson Company, Inc.'s previous bond form, a copy of which is attached, gave Third-Parties a direct right of action against a subcontractor and the surety even though J. W. Bateson Company, Inc. would not have been liable to such Third-Parties. After extended litigation in Michigan in 1961 and the settlement thereof, this fact was pointed out to us by a representative of United States Fidelity and Guaranty Company, the surety for the subcontractor involved in that litigation, and the representative of United States Fidelity and Guaranty Company stated that the language of our old bond form unnecessarily enlarged the rights of Third-Parties and placed on the surety obligations for which J. W. Bateson Company, Inc. might not be responsible. It was for this reason that the bond form was changed to that used as the bond form on the Phillips Air Devices subcontract.

[6] The provision in the J. W. Bateson Company, Inc. bond form that no suit action or proceeding shall be brought after 4 years from the date on which final payment under the subcontract falls due, was not for the purpose of waiving or extending the statutory period for commencing litigation under the Miller Act but was simply for the purpose of giving J. W. Bateson Company, Inc. ample time to file a suit against the surety if, for any reason, J. W. Bateson Company, Inc. should become obligated as the result of any default on the part of its subcontractor.

■ It may well be that the above affidavit accurately states the subjective intention of Bateson and its Miller Act surety with regard to the coverage afforded by the bond. There is no question that Bateson as general contractor was to be the primary beneficiary under the bond. However, there is likewise no question that the bond was also for the benefit of materialmen in the status of the present plaintiff. Otherwise the bond would not have provided for direct action by them. They, therefore, are entitled to the benefit of the contract reached and expressed between Aetna and Phillips Air Devices, rather than to only the guarantee which the prime contractor required and thought it obtained.

■ The court considers both the language used and the construction of the sentence to be ambiguous. It would not have thought the clause, the effect of which is at issue, restricted "costs and expenses" into which the present claim would appear to fall, even though it is for material. As neither party urges

that construction, the court need not consider whether the general rule that specific language controls over general language would make the limitation effective as to materials. The court must concede that it considers plaintiffs' interpretation of the language, the effect of which is in dispute, to be somewhat strained. On the other hand, the clause is a strange way of stating that the only claims covered by the bond are those perfected against the general contract in accordance with the Miller Act. The bond in question was not a Miller Act bond, rather the private bond of a subcontractor. It stated that action upon it must be commenced within four years. The court does not think the language relied upon need be understood as requiring that the claim of the subcontractor's materialmen have been perfected according to the Miller Act. If that were the intention of the parties they should have so stated.

Bearing in mind the rule of construction hereinbefore discussed, the court concludes that the ambiguity should be resolved as urged by the plaintiff. If Aetna intended its obligation to include only the perfected Miller Act claims of the materialmen, it could easily have so specified in the language of the bond. It could have expressed that intention and no doubt obtained that result. Rather it included the "disputed clause" which makes no mention of the Miller Act or its time provisions and sets out a specific time limitation of four years. Therefore, the plaintiff must be given the benefit of the doubt springing from the ambiguity and coverage afforded. The plaintiffs' motion to strike the defendant Aetna's fourth defense is granted.

The court is of the opinion that this order involves controlling questions of law as to which there are substantial grounds for differences of opinion and that an immediate appeal from this order may materially advance ultimate termination of this litigation.

And it is so ordered.