336 S.C. 423 (1999)
520 S.E.2d 809
CULLUM MECHANICAL CONSTRUCTION, INC., Plaintiff,
v.
SOUTH CAROLINA BAPTIST HOSPITAL, a/k/a Baptist Medical Center, Jenkins, Hancock & Sides Architects and Planners, Inc., Miller-Sharpe, Inc., John M. Miller, Donald R. Sharpe, and General Accident Insurance Company of America, Defendants.
Fairfield Flooring, Inc., Plaintiff,
v.
South Carolina Baptist Hospital, a/k/a Baptist Medical Center, Jenkins, Miller-Sharpe, Inc., John M. Miller, Donald R. Sharpe, and General Accident Insurance Company of America, Defendants.
Ross Wallcovering Co., Inc., Plaintiff,
v.
South Carolina Baptist Hospital, a/k/a Baptist Medical Center, Miller-Sharpe, Inc., John M. Miller, Donald R. Sharpe, and General Accident Insurance Company of America, Defendants.
Spratlin Electric Co., Inc., Plaintiff,
v.
South Carolina Baptist Hospital, a/k/a Baptist Medical Center, Miller-Sharpe, Inc., John M. Miller, Donald R. Sharpe, and General Accident Insurance Company of America, Defendants.
Sumter Lumber Company, Inc., Plaintiff,
v.
South Carolina Baptist Hospital, a/k/a Baptist Medical Center, Miller-Sharpe, Inc., John M. Miller, Donald R. Sharpe, and General Accident Insurance Company of America, Defendants, Palmetto Automatic Sprinkler Co., Inc., Plaintiff,
v.
South Carolina Baptist Hospital, a/k/a Baptist Medical Center, Miller-Sharpe, Inc., John M. Miller, Donald R. Sharpe, and General Accident Insurance Company of America, Defendants.
Columbia Glass, Inc., Plaintiff,
v.
South Carolina Baptist Hospital, a/k/a Baptist Medical Center, Miller-Sharpe, Inc., John M. Miller, Donald R. Sharpe, and General Accident Insurance Company of America, Defendants, *424 of whom Cullum Mechanical Construction, Inc., Fairfield Flooring, Inc., Ross Wallcovering Co., Inc., Spratlin Electric Co., Inc., Sumter Lumber Company, Inc., Palmetto Automatic Sprinkler Co., Inc., and Columbia Glass, Inc., are Appellants, and
Jenkins, Hancock & Sides Architects and Planners, Inc., and General Accident Insurance Company of America, are Respondents.
No. 2985.
Court of Appeals of South Carolina.
Heard February 9, 1999.
Decided May 3, 1999.
Refiled July 13, 1999.
Rehearing Denied July 24, 1999.
*425 Daniel T. Brailsford and J. Kershaw Spong, both of Robinson, McFadden & Moore, of Columbia, for appellants.
R. Davis Howser and Andrew E. Haselden, both of Howser, Newman & Besley; and D. Cravens Ravenel, of Baker, Barwick, *426 Ravenel & Bender, all of Columbia; and John V. Burch, of Bovis, Kyle & Burch, of Atlanta, GA, for respondents.

ORDER DENYING PETITION FOR REHEARING AND SUBSTITUTING OPINION
PER CURIAM:
After careful consideration of the Petition for Rehearing, the Court is unable to discover any material fact or principle of law that has been either overlooked or disregarded and, hence, there is no basis for granting a rehearing. It is, therefore, ordered that the Petition for Rehearing be denied. We withdraw the previously filed opinion and substitute the attached opinion.
HEARN, Judge:
Cullum Mechanical Construction, Inc. filed this action against South Carolina Baptist Hospital, a/k/a Baptist Medical Center (Owner), Jenkins, Hancock & Sides Architects and Planners, Inc. (Architect), Miller-Sharpe, Inc. (General Contractor), John M. Miller, Donald R. Sharpe, and General Accident Insurance Company of America (Surety), seeking $426,728.87 for unpaid goods and services on a project to upfit areas of the Baptist Medical Center.[1] The trial court granted Architect's summary judgment motion, finding it owed no legal or contractual duty to Cullum, a subcontractor. After a bench trial, the trial court ruled in favor of Surety, finding Cullum was not a third-party beneficiary under the bid bond. Cullum appeals both orders. We affirm.

FACTS
In the fall of 1992, Owner retained Architect to upfit the 8th and 9th floors of Baptist Hospital. Architect prepared a Project Manual dated April 11, 1993, to be used by potential contractors in submitting bids. General Contractor was among those contractors invited to bid on the project. On May 4, 1993, General Contractor submitted its bid of $3,540,700.00. *427 After some initial changes, Owner executed a contract on June 10, 1993, with General Contractor for $3,260,430.00. The Notice to Proceed date was June 11, 1993.
As portions of the work were completed, Architect certified payments to General Contractor: (1) $77,670.00 on June 28, 1993; (2) $114,967.80 on July 26, 1993; (3) $463,784.40 on August 30, 1993; (4) $476,515.80 on October 4, 1993; (5) $384,043.50 on November 3, 1993; and (6) $449,082.00 on December 3, 1993.
Despite receiving these monies, totaling $1,966,063.50, General Contractor did not pay its subcontractors. On October 11, 1993, Cullum wrote General Contractor, stating: "[A]s of September, we had billed you $442,065.60 and haven't received any payments. Please get our July and August payments to us immediately." It was not until November 10, 1993, however, that Cullum executed its contract with General Contractor. The contract's cover letter also acknowledged payment problems: "We billed $225,499.50 on August 19, 1993, and received this payment on November 9, 1993. This is not promptly or timely as indicated by the contract. We have also billed $127,712.70 on September 20, 1993, and payment is due but not received."
Other subcontractors began to complain about nonpayment. In response to Owner's inquiry, Architect requested a copy of General Contractor's payment bond on November 12, 1993. On December 7, 1993, General Contractor submitted a "General Agreement of Indemnity" issued by Chubb Group of Insurance Companies dated August 24, 1993. Despite not receiving a payment bond from General Contractor, Architect apparently approved reducing the retainage from ten to five percent in December 1993. Moreover, Architect certified additional payments totaling $1,284,893.95: (1) $635,911.45 on December 23, 1993; (2) $503,063.85 on January 31, 1994; (3) $94,819.95 on March 2, 1994; and (4) $51,098.70 on April 14, 1994.[2]
*428 Finally, on May 13, 1994, General Contractor admitted there was no payment bond on the project and that the monies it received from Owner had been used to pay unrelated legal bills. Cullum and other subcontractors sued Owner, General Contractor, Surety, and two principals of General Contractor; Cullum also sued Architect. Uncollectible default judgments were obtained against General Contractor. Cullum's claims against Owner were settled.[3] The trial judge granted Architect's motion for summary judgment. Cullum appeals this order. After a trial concerning Surety's liability, the trial judge found for Surety. Cullum, on behalf of all plaintiffs, appeals this order.

APPEAL AS TO ARCHITECT
Cullum first argues the trial court erred by granting Architect's summary judgment motion. We disagree.
"Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tupper v. Dorchester County, 326 S.C. 318, 325, 487 S.E.2d 187, 191 (1997); see Rule 56(c), SCRCP. Summary judgment should be granted when it is clear that "further inquiry into the facts is not desirable to clarify application of the law." Hyder v. Jones, 271 S.C. 85, 87, 245 S.E.2d 123, 124-25 (1978); Parker v. Williams & Madjanik, Inc., 269 S.C. 662, 664, 239 S.E.2d 487, 488 (1977).
Cullum acknowledges it had no contract with Architect.[4] However, relying on Tommy L. Griffin Plumbing & Heating *429 Co. v. Jordan, Jones & Goulding, Inc., 320 S.C. 49, 463 S.E.2d 85 (1995), Cullum contends Architect owed it a professional duty distinct from any contractual duty. Cullum maintains the project manual, the contracts between Owner and Architect, and the contract between Owner and General Contractor create a genuine issue of material fact whether Architect owed the subcontractors a legal duty. Cullum contends Architect undertook to marshal and assemble contract documents and to supervise payments on the project, thereby creating a duty to do so with due care. Further, Cullum alleges that Architect had a legal duty not to injure foreseeable parties with whom it had a special relationship even absent contractual privity.
Cullum introduced expert testimony supporting its assertion of a special relationship between subcontractors and Architect. Cullum's expert, Roy D. Smith, opined:
Under [Architect's] professional services contract with Baptist Medical Center ("Owner") it was Jenkins, Hancock & Sides' ("Architect") professional responsibility to marshall [sic] and assemble the contract documents, including review of the payment and labor bond for sufficiency under the contract documents.... The Architect breached its professional duty of care by failing to secure a payment bond from the contractor as part of the preconstruction submittal package. The Architect breached it professional duty of care by misrepresenting that failure to Cullum. *430 The Architect also had a professional duty to accurately certify payment requests of the contractor in order that those items for which the Owner was issuing payment were in fact performed or delivered. The Architect owed a professional duty not to certify payment applications without reasonably assuring that the labor and payment bond had been provided. The Architect breached its professional duty by approving such payment application without ascertaining the existence of the labor and material payment bond....
The Architect breached its professional duty of care to Cullum by certifying several payment requests without obtaining written documentation that Cullum had been paid and obtaining the surety's consent for reduction of retainage.
While a tortfeasor may be liable for dereliction of a contractual duty owed to third parties not in privity with the tortfeasor, "[i]t is essential to liability for negligence that the parties have some relationship recognized by law to support the duty owed by the tort-feasor." Barker v. Sauls, 289 S.C. 121, 122, 345 S.E.2d 244, 244 (1986) (citations omitted). The trial court refused to impose a duty in tort because "nothing in the present case suggests any `special relationship' between Cullum, a subcontractor of Miller-Sharpe, Inc., and Jenkins, Hancock & Sides, the architectural firm engaged by the owner." We agree.
Under current case law, a design professional owes a legal duty to foreseeable parties that are not in privity only to design and supervise construction with due care. See Tommy L. Griffin Plumbing, 320 S.C. at 55-56, 463 S.E.2d at 88-89; see also Beachwalk Villas Condominium Assoc., Inc. v. Martin, 305 S.C. 144, 146-47, 406 S.E.2d 372, 374 (1991) (extending the holding in Kennedy to architects and finding an implied warranty of workmanship even absent privity); Kennedy v. Columbia Lumber & Mfg. Co., 299 S.C. 335, 345-46, 384 S.E.2d 730, 737 (1989) ("[B]uilders [must] undertake construction commensurate with industry standards. Where a building code or industry standard does not apply, public policy further demands the imposition of a legal duty on a builder to refrain from constructing housing that he knows or should *431 know will pose serious risks of physical harm. We recognizee[] such a duty ... should extend to foreseeable parties."); Hill v. Polar Pantries, 219 S.C. 263, 269-71, 64 S.E.2d 885, 887-88 (1951) (implying a duty to supervise and placing liability for failure to adequately design and supervise against the "design professional," a freezer locker operator who represented himself to be an expert in freezer lockers).
However, a legal duty must be ascertained after a case-specific determination of the parties' relationship. In Tommy L. Griffin Plumbing, the South Carolina Supreme Court recognized that under certain circumstances, a relationship may exist between design professionals and third parties "such that the design professional owes a professional duty to the plaintiff arising separate and distinct from any contractual duties." Id. at 55, 463 S.E.2d at 89. There, the supreme court held the design professional, an engineer who supervised the construction of a water trunk for Charleston County, owed a duty to the contractor not to negligently design or negligently supervise the project. The liability sought in this case is more attenuated, i.e., whether a design professional, such as Architect, owes a duty to a subcontractor, Cullum, based on the contractual obligations Architect owed to Owner and General Contractor beyond the professional duty to design and supervise construction with due care.
Cullum alleges that Architect failed to marshal and assemble the contract documents with due care, injuring Cullum through inadequate business assurances required of Architect by its contract with Owner. Although that contract limits Architect's contractual duties to Owner's benefit, Cullum argues that the construction documents gave Architect effective control over all facets of the work and over all parties performing the construction; thus, Architect was required to use due care in the exercise of those duties. Specifically, Cullum asserts the documents expressly required Architect to verify the existence of the payment and performance bonds, to obtain lien waivers from subcontractors whenever it approved and certified progress payments, and to obtain Surety's approval for the reduction in the retainage.
We are reluctant to impose upon Architect a legal duty to Cullum under these facts. Cullum is not arguing the traditional *432 tort theory that we have recognized third parties may have against Architects: to design and supervise construction with due care. This recognized duty is an architect's responsibility to a building project even absent additional contractual duties. Here, Cullum argues Architect should be liable for additional contractual duties that when neglected or performed negligently harm third parties, specifically subcontractors. This extension of architect liability, beyond traditional architectural duties recognized in our case law, is not justified in this case. Unlike Cullum's claims that Architect wielded enormous control over the project, Architect in this case did not have specific contractual authority to halt construction. See Tommy L. Griffin Plumbing, 320 S.C. at 56, 463 S.E.2d at 89. Because we do not think Architect undertook supervising the administration of the contract and its payments for the subcontractor's benefit, we do not extend liability in that way.
Although Cullum and other subcontractors complained to Architect about General Contractor's failure to pay, such complaints are insufficient to give rise to an independent legal duty flowing from Architect to Cullum. Moreover, the subcontractors themselves-knew they should be signing lien waivers from Owner to release payments to General Contractor, but no waivers had been presented to them. These facts put Cullum on notice that its interests may not be protected, and it cannot now claim that Architect was obliged to act as Cullum's protector.
We decline to extend the reasoning of Tommy L. Griffin Plumbing to hold Architect liable to Cullum on these facts. Therefore, we affirm the trial judge's decision to grant summary judgment for Architect.

APPEAL AS TO SURETY
Cullum argues the trial court erred by finding Surety was not liable to the subcontractors for failing to provide a payment bond as promised in the bid bond. We disagree.
"The cardinal rule of contract interpretation is to ascertain and give effect to the intention of the parties." Chan v. Thompson, 302 S.C. 285, 289, 395 S.E.2d 731, 734 (Ct.App.1990). In determining the intention of the parties, a court first looks to the language of the contract. C.A.N. *433 Enterprises, Inc. v. South Carolina Health & Human Servs. Fin. Comm'n, 296 S.C. 373, 377, 373 S.E.2d 584, 586 (1988). If the language is clear and unambiguous, the language alone determines the contract's force and effect. Id; Conner v. Alvarez, 285 S.C. 97, 101, 328 S.E.2d 334, 336 (1985).
Cullum argues because the contract documents required a payment bond, Surety issued the bid bond with the implicit guarantee that it would also issue the payment bond. Further, Cullum asserts it is this guarantee that was intended to benefit third parties such as Cullum. The bid bond provided:
The condition of this obligation is such that if the aforesaid Principal [Miller-Sharpe, Inc.] shall be awarded the contract, the said Principal will, within the time required, enter into formal contract and give a good and sufficient bond to secure the performance of the terms and conditions of the contract, then this obligation [is] to be void; otherwise, the Principal and Surety will pay unto the Obligee [Baptist Medical Center] the difference in money between the amount of the bid of said Principal and the amount for which the Obligee legally contracts with another party to perform the work if the latter amount be in excess of the former, but in no event shall liability hereunder exceed the penal sum hereof, provided, however, neither Principal nor Surety shall be bound hereunder unless Obligee shall, prior to execution of the contract furnish evidence satisfactory to the Surety of the Obligee's ability to make payment to the Principal in accordance with the terms of the contract.
Cullum acknowledges that "[General Contractor] never requested or paid for a payment or performance bond .... Payment and performance bonds were never issued" by Surety. Although Cullum contends Surety promised it would issue a payment bond, the terms of the bid bond clearly require General Contractor, not Surety, to obtain a payment bond. There is simply no enforceable promise by Surety to provide a payment bond. Moreover, because General Contractor did not obtain a payment bond, Surety's obligation under the bid bond became void. Therefore, the trial court did not err in ruling for Surety.
AFFIRMED.
HUFF and STILWELL, JJ., concur.
NOTES
[1] The other appellants filed similar lawsuits. Apparently, only Cullum sued Architect. By stipulation, all appellants will be bound by the court's determination in Cullum's suit against Surety.
[2] Additional applications for payment were completed by General Contractor on March 24, 1994, for $166,112.50; and on April 22, 1994, for $3,957.70. Apparently, neither of these payments were approved by Architect.
[3] At oral argument, Counsel for Architect stated mechanics' liens had been filed. Cullum's counsel did not dispute that, but clarified that its remedy against Owner was inadequate. See S.C.Code Ann. § 29-5-20 (1991) ("However, in no event shall the total aggregate amount of liens on the improvement exceed the amount due by the owner."). The record shows that Owner owed only $170,259.50 on the entire contract, and Cullum was due $ 426,728.87; therefore, the mechanics' lien remedy against Owner was inadequate.
[4] Only two contractual relationships existed in this case, that between Owner and General Contractor and that between Owner and Architect. The General Conditions to the Contract for Construction contained the following provision:

1.1.2 THE CONTRACT
The Contract Documents form the Contract for Construction.... The Contract Documents shall not be construed to create a contractual relationship of any kind (1) between the Architect and Contractor, (2) between the Owner and a Subcontractor or a Subcontractor or (3) between any persons or entities other than the Owner and Contractor....
Also, provision 4.2.1 of the AIA contract between Owner and Architect specifically limits Architect's contractual obligations to Owner and explicitly denies any duty to third parties. Thus, there was no contractual relationship between General Contractor and Architect, much less between Architect and the subcontractors like Cullum.
Cullum's contractual link to this project was its relationship with General Contractor. The Standard Form Agreement that Owner executed with Architect contained this language in Provision 9.7: "Nothing in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either the Owner or Architect."