344 S.C. 426 (2001)
544 S.E.2d 838
CULLUM MECHANICAL CONSTRUCTION, INC., Plaintiff,
v.
SOUTH CAROLINA BAPTIST HOSPITAL, a/k/a Baptist Medical Center, Jenkins, Hancock & Sides Architects and Planners, Inc., Miller-Sharpe, Inc., John M. Miller, Donald R. Sharpe, and General Accident Insurance Company of America, Defendants.
Fairfield Flooring, Inc., Plaintiff,
v.
South Carolina Baptist Hospital, a/k/a Baptist Medical Center, Miller-Sharpe, Inc., John M. Miller, Donald R. Sharpe, and General Accident Insurance Company of America, Defendants.
Ross Wallcovering Co., Inc., Plaintiff,
v.
South Carolina Baptist Hospital, a/k/a Baptist Medical Center, Miller-Sharpe, Inc., John M. Miller, Donald R. Sharpe, and General Accident Insurance Company of America, Defendants.
Spratlin Electric Co., Inc., Plaintiff,
v.
South Carolina Baptist Hospital, a/k/a Baptist Medical Center, Miller-Sharpe, Inc., John M. Miller, Donald R. Sharpe, and General Accident Insurance Company of America, Defendants.
Sumter Lumber Company, Inc., Plaintiff,
v.
South Carolina Baptist Hospital, a/k/a Baptist Medical Center, Miller-Sharpe, Inc., John M. Miller, Donald R. Sharpe, and General Accident Insurance Company of America, Defendants.
Palmetto Automatic Sprinkler Co., Inc., Plaintiff,
v.
South Carolina Baptist Hospital, a/k/a Baptist Medical Center, Miller-Sharpe, Inc., John M. Miller, Donald R. Sharpe, and General Accident Insurance Company of America, Defendants.
Columbia Glass, Inc., Plaintiff,
v.
South Carolina Baptist Hospital, a/k/a Baptist Medical Center, Miller-Sharpe, Inc., John M. Miller, Donald R. Sharpe, and General Accident Insurance Company of America, Defendants, *427 of whom Cullum Mechanical Construction, Inc., Fairfield Floorings, Inc., Ross Wallcovering Co., Inc., Spratlin Electric Co., Inc., Palmetto Sprinkler Co., Inc., and Columbia Glass, Inc., are, Petitioners,
Jenkins, Hancock & Sides Architects and Planners, Inc., and the General Accident Insurance Company of America, are Respondents.
No. 25265.
Supreme Court of South Carolina.
Heard December 6, 2000.
Decided March 26, 2001.
*428 Daniel T. Brailsford and J. Kershaw Spong, of Robinson, McFadden & Moore, P.C., of Columbia, for petitioner.
R. Davis Howser and Andrew E. Haselden, of Howser, Newman & Besley, L.L.C., of Columbia, for respondent Jenkins, Hancock & Sides Architects and Planners, Inc.
D. Cravens Ravenel, of Baker, Ravenel & Bender, of Columbia; and John V. Burch, of Bovis, Kyle & Burch, of Atlanta, Georgia, for respondent General Accident Insurance Company of America.

ON WRIT OF CERTIORARI TO THE COURT OF APPEALS
MOORE, Justice:
We granted a writ of certiorari to review the Court of Appeals' decision finding that respondent (Architect) did not owe a duty of reasonable care to petitioner (Cullum). Cullum Mechanical Constr., Inc. v. South Carolina Baptist Hosp., 336 S.C. 423, 520 S.E.2d 809 (Ct.App.1999). We reverse.

*429 FACTS
Cullum, a subcontractor, filed an action against South Carolina Baptist Hospital, a/k/a Baptist Medical Center (Owner), Architect, Miller-Sharpe, Inc. (General Contractor) and its principals, and General Accident Insurance Company of America (Surety) seeking $426,728.87 for unpaid goods and services on a project to perform construction on certain floors of the Medical Center. While other subcontractors filed similar suits, only Cullum sued Architect on the theory that Architect owed a duty to use reasonable care in the administration of contractual provisions that were designed to ensure payment to subcontractors.
In September 1992, Owner and Architect contracted to conduct renovations in the Medical Center. Architect prepared a Project Manual for potential contractors to use in submitting bids. After entering a successful bid, General Contractor and Owner executed an agreement on June 10, 1993.
Before bidding on the subcontractual work for General Contractor, Cullum had several individuals review the Project Manual. Cullum's responsibilities, after its bid was accepted, were to perform heating, ventilation, air conditioning, and plumbing work on the project.
Architect's responsibilities under its contract with Owner included reviewing General Contractor's payment applications, certifying the amounts due General Contractor,[1] and determining whether Owner and General Contractor had performed according to the requirements of their contract upon written request of either party. Owner was responsible for giving prompt written notice to Architect if Owner became aware of any fault or defect in the project or nonconformance with the contract documents.
*430 Under General Contractor's contract with Owner, Architect had the ability to withhold the certification of payments if General Contractor failed to properly pay subcontractors.
General Contractor was required to post a performance and payment bond, which would be delivered to Owner at or prior to delivery of the signed agreement between Owner and General Contractor. The payment bond would ensure payment to those who provided labor or materials to the project. However, General Contractor did not deliver the bond as required. Despite General Contractor's failure to provide a bond, Owner and General Contractor entered into their contract.
General Contractor's responsibilities also included promptly paying Cullum, and other subcontractors, upon receipt of payment from Owner and, upon request, furnishing a copy of the bond. Further, General Contractor had to submit to Architect with each payment application satisfactory evidence that all indebtedness connected with the part of the work for which application for payment was made had been paid, and submit "a properly executed subcontractor waiver of lien ... for the previously paid application for payment, stating [the] amounts paid." However, General Contractor never attached the lien waivers to the payment applications.
While the construction project was proceeding, General Contractor was dilatory in making payments to Cullum. Before Cullum executed its contract with General Contractor, Cullum wrote General Contractor stating, although Cullum had billed $442,065.60, no payments had yet been received. Cullum and Architect also engaged in a telephone conversation in which Cullum informed Architect it and other subcontractors were not being paid. Cullum asked Architect if General Contractor was bonded, and Architect responded that it did not know.
On November 10, 1993, Cullum finally executed its contract with General Contractor. The cover letter stated that while some payments had been untimely made, $127,712.70 was still outstanding. Cullum requested in the letter that General Contractor give Cullum the name of the bonding company on the project. However, the name was never given. Cullum *431 stated that it was unaware that General Contractor had not submitted a payment bond until after the job was completed.
When other subcontractors began to complain about nonpayment, Architect, in response to Owner's inquiry, requested a copy of General Contractor's payment bond. General Contractor submitted a "General Agreement of Indemnity," which did not comply with the contract terms because it was not a payment bond. However, Owner stated that it believed the "General Agreement of Indemnity" indicated a bond existed. Architect never recommended to Owner that Owner should terminate General Contractor because General Contractor had not provided a payment bond. Architect stated that it simply passed the information received from General Contractor to Owner.
Although Architect knew there was not a payment bond and that subcontractors were not being paid, Architect continued to certify payments and reduced the amount Owner retained[2] from the payments from ten percent to five percent.[3]
*432 After the project was completed and Cullum had not been fully paid by General Contractor, Cullum sued Architect. Architect's motion for summary judgment was granted, and the trial court found that Architect did not owe a duty to Cullum. Cullum appealed the order to the Court of Appeals, which affirmed. Cullum Mechanical Constr., Inc. v. South Carolina Baptist Hosp., supra. We granted a writ of certiorari to review the Court of Appeals' decision.

ISSUE
May an architect owe a duty to ensure a general contractor pays its subcontractors?

DISCUSSION
A trial court may properly grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. Summary judgment is not appropriate, however, when further inquiry into the facts of the case is desirable to clarify the application of the law. Brockbank v. Best Capital Corp., 341 S.C. 372, 534 S.E.2d 688 (2000) (citing Tupper v. Dorchester County, 326 S.C. 318, 487 S.E.2d 187 (1997)). In determining whether any triable issues of fact exist, the court must view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the non-moving party. Id. (citing Manning v. Quinn, 294 S.C. 383, 365 S.E.2d 24 (1988)).
"A breach of a duty arising independently of any contract duties between the parties ... may support a tort action." Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc., 320 S.C. 49, 55, 463 S.E.2d 85, 88 (1995) (citation omitted). "When ... there is a special relationship between the alleged tortfeasor and the injured party not arising in contract, the breach of that duty of care will support a tort action." Id. (citations omitted).
*433 In Tommy L. Griffin, we found that where there is a special relationship between the design professional and the contractor, the design professional may owe a duty to the contractor. Id. at 53-55, 463 S.E.2d at 87-88. We expressed that there was "no logical reason to insulate design professionals from liability when the relationship between the design professional and the plaintiff is such that the design professional owes a professional duty to the plaintiff arising separate and distinct from any contractual duties between the parties or with third parties." Id. at 55, 463 S.E.2d at 89 (citing Gilliland v. Elmwood Properties, 301 S.C. 295, 391 S.E.2d 577 (1990); State Ports Auth. v. Booz-Allen & Hamilton, Inc., 289 S.C. 373, 346 S.E.2d 324 (1986)). Further, we noted that whether the design professional owes a duty depends on the facts and circumstances of each case. Id. at 55-56, 463 S.E.2d at 89.
Generally, an architect does not have a duty to assure payment to subcontractors; however, special conditions in these contract documents may have given rise to a special relationship with subcontractors, and therefore a duty of care. We find it is a factual issue whether these circumstances give rise to a special relationship between Architect and Cullum, which would give rise to a duty on the part of Architect.[4]See Tommy L. Griffin, supra. We believe further inquiry into the facts of the case is desirable to clarify the application of the law. See Brockbank v. Best Capital Corp., supra. Accordingly, we find that the trial court erred by granting Architect's motion for summary judgment.
REVERSED.
TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.
NOTES
[1] Architect's issuance of a certificate of payment constituted "a representation that [General] Contractor [was] entitled to payment in the amount certified." However, the issuance of the certificate of payment was not a representation that Architect had "ascertained how or for what purpose [General] Contractor [had] used money previously paid on account of the Contract Sum."
[2] "Retainage" is the percentage General Contractor and Owner agreed to withhold from each pay request to be paid at the end of the project, or as negotiated through the course of the project. Retainage served to assure General Contractor's completion of the work and to satisfy subcontractors' and suppliers' lien claims.
[3] Under the supplementary conditions to Architect and Owner's contract, Architect had the ability to reduce the amount of retainage withheld from the payments to General Contractor. The condition stated the following:

If the manner of completion of the Work and its progress are and remain satisfactory to the Architect, and in the absence of other good and sufficient reasons, for each category of Work shown to be 50 percent or more complete in the application of Payment, the Architect may, without reduction of previous retainage, and on presentation by [General] Contractor of the written consent of surety, certify any remaining progress payments for each category of Work to be paid in full.
(Emphasis added). Further, the contract between General Contractor and Owner stated that the retainage would be reduced to five percent when fifty percent of the work was completed, if approved by Owner and Architect.
In the American Institute of Architects' Guide for Supplementary Conditions, the guide for this retainage section cautions that, "[n]o reduction in retainage should be authorized unless consent of surety has been furnished by the Contractor."
[4] In addition to determining whether a duty existed in this case, the jury must still determine whether Cullum will prevail on the other elements of negligence.