750 S.E.2d 921

**HARD HAT WORKFORCE SOLUTIONS, LLC, Appellant,**

v.

**MECHANICAL HVAC SERVICES, INC., Great American Insurance Company, and Liberty Mutual Insurance Company, Defendants, Of Whom Great American Insurance Company is the, Respondent.**

**Appellate Case No. 2011–202168.**

**No. 27329.**

Supreme Court of South Carolina.

Heard April 30, 2013.
Decided Nov. 13, 2013.

---

Henry P. Wall, of Bruner Powell Wall & Mullins, LLC, of Columbia, for Appellant.

Charles H. McDonald, of Robinson McFadden & Moore, PC, of Columbia, for Respondent.

Chief Justice TOAL.

Hard Hat Workforce Solutions, LLC (Hard Hat) appeals the circuit court order granting summary judgment in favor of Great American Insurance Company (GAI). Hard Hat argues it is entitled to make a claim against a payment bond GAI issued on a construction project. This Court certified this case for review pursuant to Rule 204(b), SCACR. We reverse.

### Factual/Procedural History

This action arises out of the construction of a new high school in York County (the project). Edifice, Inc. (Edifice), the general contractor, hired subcontractor Walker White, Inc. (Walker White) to perform mechanical and plumbing work on the project. As a part of their contract, Edifice required Walker White to furnish a payment bond. Walker White ultimately furnished a payment bond (the bond) in the amount of $17,358,043 from surety GAI. The bond stated,

> NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the Principal shall promptly make payment to all persons supplying labor and material in the prosecution of the work provided for in said Subcontract and any and all modifications of said Subcontract that may hereafter be made, then this obligation shall be null and void otherwise it shall remain in full force and effect.
>
> . . . .
>
> There said Principal and the said Surety agree that this Bond shall inure to the benefit of all persons supplying labor and material in the prosecution of the work provided for in said Subcontract, as well as to the Obligee, and that such persons may maintain independent actions upon this Bond in their own names.

Walker White later subcontracted the installation of ductwork to Mechanical HVAC Services, Inc. (MHS). MHS, in turn, subcontracted with Hard Hat for temporary skilled labor on MHS' portion of the project. During the project's construction, Eric Schmidt, Hard Hat's territory manager, sent three e-mails to J.T. East, Walker White's assistant project manager, regarding Hard Hat's involvement with the project. The first e-mail, dated August 4, 2009, and titled "Manpower," stated, "We are working with MHS and helping them set up some of the walk ups that you guys have and want to try." The second e-mail, dated September 29, 2009, and titled "General Labor," stated, "Along with helping out on the skilled end we have sent MHS general laborers who have been reporting to the general contractor." The last e-mail, dated October 22, 2009, and titled "Clean up," stated, "Bo informed me that clean up is back on for full time down on that project.

I sent Bo 2 laborers and if you need clean up guys I can have 2 more sent down your way."

By way of affidavit, Schmidt stated the purpose of these e-mails was to inform Walker White of the existence and nature of Hard Hat's work on the project and to offer Walker White additional services directly. Schmidt further stated that aside from the e-mails, he communicated regularly with Walker White's agents and employees during Hard Hat's work on the project. Schmidt stated he communicated most with East, noting East frequently allowed Hard Hat to use Walker White's jobsite trailer to conduct routine office work. Schmidt noted East provided him with his corporate e-mail address, through which they communicated on multiple occasions.

Eric Byrd, Hard Hat's regional manager, also filed an affidavit stating he too communicated with Walker White's employees and agents throughout Hard Hat's work on the project. Byrd said his primary point of contact was East, who held himself out to be Walker White's project manager. Byrd noted he visited the jobsite on at least one occasion in the fall of 2009, met East and other Walker White employees, and advised East of the nature of Hard Hat's work on the project. Byrd stated he also conducted a security briefing of Hard Hat's employees during this visit, and East allowed Byrd to use Walker White's jobsite trailer for this meeting. Finally, Byrd stated he informed East that Hard Hat was not affiliated with MHS, but instead provided them labor under contract.

Although Walker White paid MHS $535,357.06—the full value of their contract—as of January 2010, MHS failed to pay $85,000 it owed to Hard Hat for its work on the project. In January 2010, Mark Holcomb of Hard Hat spoke with East and Amy Miller, Walker White's project manager, over the telephone and informed them MHS owed Hard Hat approximately $85,000 for labor it provided on the project. On February 8, 2010, Walker White informed MHS it was in default under its subcontract with Walker White due to lack of performance. Thereafter, MHS abandoned the project and did not perform any additional work.

Hard Hat brought a claim against MHS for breach of contract and obtained a default judgment. Hard Hat also filed a claim to collect on the payment bond Walker White

obtained from GAI, which is the issue currently before this Court. GAI moved for summary judgment, arguing Hard Hat could not collect on the bond because it failed to provide Walker White with adequate notice of its work on the project pursuant to Section 29–5–440 of the South Carolina Code. GAI argued its liability, as surety on the bond, was therefore limited to the amount Walker White owed MHS at the time Hard Hat informed Walker White of its claim on the bond on March 5, 2010. GAI asserted it paid MHS in full as of January 2010, and thus, Hard Hat could not collect anything.

The circuit court granted GAI's motion for summary judgment. The court found Hard Hat's bond claim was subject to section 29–5–440's notice provisions because South Carolina statutory law is part of every contract. The court further found Hard Hat failed to provide a "notice of furnishing" under section 29–5–440. The court stated 29–5–440 contained four requirements for a notice of furnishing: (1) written notice, (2) to the bonded contractor, (3) sent via e-mail, fax, personal service, or registered or certified mail, (4) to any place the bonded contractor maintains a permanent office or its address on file at the Department of Labor. The court found Hard Hat's e-mails to Walker White did not meet these requirements because they were in the nature of solicitations for business rather than notices of furnishing, and were sent to an assistant project manager stationed in a jobsite trailer. The circuit court opined legislative intent was that notice be "delivered to a responsible person employed with the bonded contractor at its *permanent* place of business, not a jobsite."

## ISSUE PRESENTED

Whether the circuit court erred in granting GAI's motion for summary judgment on Hard Hat's payment bond claim.

## STANDARD OF REVIEW

In reviewing a grant of summary judgment, the appellate court applies the same standard as the trial court under Rule 56(c), SCRCP. *Quail Hill, L.L.C. v. Cnty. of Richland*, 387 S.C. 223, 234, 692 S.E.2d 499, 505 (2010). Summary judgment is proper if, viewing the evidence in a light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled

to a judgment as a matter of law. *Cullum Mech. Constr., Inc. v. S.C. Baptist Hosp.*, 344 S.C. 426, 432, 544 S.E.2d 838, 841 (2001) (citing Rule 56(c), SCRCP).

ANALYSIS

Hard Hat argues the circuit court erred in granting GAI's motion for summary judgment because the bond did not include any notice provisions or reference section 29-5-440. Hard Hat contends the bond therefore granted broader coverage with less stringent notice requirements than a bond issued under section 29-5-440, which is permissible as bonds are contractual in nature and the bond at issue was a private bond not required by statute. Alternatively, Hard Hat argues that if section 29-5-440 applies to the bond, summary judgment was nevertheless improper because it presented evidence that it provided Walker White a notice of furnishing in accordance with the statute. Specifically, Hard Hat asserts the e-mails it sent to Walker White's assistant project manager, at a minimum, present questions of fact for trial as to whether Hard Hat met section 29-5-440's requirements and adequately informed Walker White that it furnished labor to the project. We agree.

Section 29-5-440 provides,

Every person who has furnished labor, material, or rental equipment to a bonded contractor or its subcontractors in the prosecution of work provided for in any contract for construction, and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material or rental equipment was furnished or supplied by him for which such claim is made, shall have the right to sue on the payment bond for the amount, or the balance thereof, unpaid at the time of the institution of such suit and to prosecute such action to final execution and judgment for the sum or sums justly due him.

A remote claimant shall have a right of action on the payment bond only upon giving written notice by certified or registered mail to the bonded contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the

material or rental equipment upon which such claim is made. However, in no event shall the aggregate amount of any claim against such payment bond by a remote claimant exceed the amount due by the bonded contractor to the person to whom the remote claimant has supplied labor, materials, rental equipment, or services, *unless the remote claimant has provided notice of furnishing labor, materials, or rental equipment to the bonded contractor. Such written notice to the bonded contractor shall be personally served or sent by fax or sent by electronic mail or sent by registered or certified mail, postage prepaid, to the bonded contractor at any place the bonded contractor maintains a permanent office for the conduct of its business, or at the current address as shown on the records of the Department of Labor, Licensing and Regulation.* After receiving the notice of furnishing labor, materials, or rental equipment, no payment by the bonded contractor shall lessen the amount recoverable by the remote claimant. However, in no event shall the aggregate amount of claims on the payment bond exceed the penal sum of the bond.

No suit under this section shall be commenced after the expiration of one year after the last date of furnishing or providing labor, services, materials, or rental equipment.

For purposes of this section, "bonded contractor" means a contractor or subcontractor furnishing a payment bond, and "remote claimant" means a person having a direct contractual relationship with a subcontractor of a bonded contractor, but no contractual relationship expressed or implied with the bonded contractor.

*Id.* (emphasis added).

The threshold issue in this case is whether Hard Hat's bond claim must comply with section 29–5–440's "notice of furnishing" provision. We find it does not. While this Court has never addressed this issue, a New York court addressed the issue under a similar set of facts in *Scaccia Concrete Corp. v. Hartford Fire Insurance Co.,* 212 A.D.2d 225, 628 N.Y.S.2d 746 (N.Y.App.Div.1995).

In *Scaccia,* the City of New York awarded a construction contract to Gemma Construction Company and required Gem-

ma to furnish a payment bond in an amount equal to the full contract price "as security for the payment of all persons performing labor or furnishing materials." *Id.* at 747. Gemma subcontracted the concrete work to New Superior Construction Corporation. *Id.* The plaintiff, Scaccia Concrete Corporation, supplied concrete to New Superior but was never paid in full. *Id.* After the plaintiff filed an action to recover under the bond, the surety moved for summary judgment on the ground that it had not been commenced in accordance with the notice and time provisions of the State Finance Law. *Id.* The plaintiff countered that since the bond did not refer to the State Finance Law and, in fact, contained provisions contrary to the State Finance Law, the bond was merely a common-law bond, rather than a statutory bond, that must be read and interpreted according to the bond language. *Id.* at 747–48.

The court agreed, finding the bond was a common-law bond because it did not mention the State Finance Law or any of its provisions. *Id.* at 750. The court explained that a bond which is not issued under a statute—a common-law bond—may contain provisions less onerous than those issued under the State Finance Law, thereby affording subcontractors greater protection. *Id.* at 747. The court found the bond at issue was "less restrictive than the statute with respect to the providing of notices" because the bond did not reference the statute or its notice requirements. *Id.* at 751. The court noted such relaxed notice provisions were permissible and, in fact, furthered public policy by providing greater protection to persons furnishing labor and materials for construction contracts. *Id.* at 752. The court concluded the bond, being a common-law bond rather than a statutory bond, must be enforced according to its terms. *Id.*

 *Scaccia* is helpful in developing a definition for statutory and common-law bonds under South Carolina law. We define statutory bonds as those either (1) provided because required by statute and in accordance with the minimum guidelines set out in section 29–5–440 of the South Carolina Code,[1] or (2) that contain express or implied reference to the

---

1. *See, e.g.,* S.C.Code Ann. § 29–6–250 (2013) (mandating real property owners contractually require a contractor to provide a payment bond when a governmental body is a party to the contract); *see also*

provisions detailed in the statute. *Cf. Scaccia*, 628 N.Y.S.2d at 748, 749, 750. In contrast, we define common-law bonds as either (1) any bond not required by statute (*i.e.*, voluntarily provided, perhaps to meet a contractual provision in the agreement between the parties), or (2) any bond required by statute but that specifically varies the statutory requirements so as to provide broader protection. *Cf.* S.C.Code Ann. § 29–6–290 (2013) ("A provision in a contract for the improvement of real property in the State must not operate to derogate the rights of a construction contractor, subcontractor, supplier, or other proper claimant against a payment bond or other form of payment security or protection established by law.").

██ We find Walker White's bond from GAI, like the bond in *Scaccia*, is a common-law bond. It was not required by statute, but instead, by Walker White's contract with Edifice, the general contractor. Moreover, the bond did not mention section 29–5–440 or any notice requirements. Accordingly, the bond must be enforced according to its terms, which indicate Hard Hat had no duty to comply with section 29–5–440's notice provisions. *See Scaccia*, 628 N.Y.S.2d at 750, 752; *see also United States v. Algernon Blair, Inc.*, 329 F.Supp. 1360, 1364 (D.S.C.1971) (finding a subcontractor had no duty to comply with the Miller Act's time provisions where the payment bond was one of a private subcontractor, rather than a bond required by the Miller Act, and contained no mention of the Act or its time provisions).

██ The rationale for enforcing a private common-law payment bond according to its terms supports the policy behind payment bonds, which is to secure payment for subcontractors supplying labor and materials on construction projects. Moreover, in South Carolina, payment bonds issued by a surety for consideration are treated like insurance policies. *Id.* at 1362 (stating sureties selling bonds for profit are treated as insurers and the rights and liabilities of the parties are governed by the rules applicable to contracts of insurance); *First Nat'l Bank of S.C. v. U.S. Fid. & Guar. Co.*, 373 F.Supp. 235, 239 (D.S.C.1974) (citing *Mass. Bonding & Ins. Co. v. Law*, 149 S.C. 402, 147 S.E. 444 (1929)); *Standard Accident*

---

S.C.Code Ann. § 29–5–440 (outlining minimum payment bond requirements and protections).

*Ins. Co. v. Simpson,* 64 F.2d 583, 590 (4th Cir.1933) (stating bonds, like insurance, are construed in favor of coverage); *see also Sims' Crane Serv., Inc. v. Reliance Ins. Co.,* 514 F.Supp. 1033, 1042 (S.D.Ga.1981) ("Unlike gratuitous sureties, compensated sureties are not favorites of the law."). Accordingly, while payment bonds must meet certain minimum coverage requirements in some instances, parties should not be prohibited from contracting for broader coverage or less stringent notice requirements should they choose to do so. *See Peabody Seating Co., Inc. v. Jim Cullen, Inc.,* 56 Wis.2d 119, 201 N.W.2d 546, 550 (1972) ("There is no doubt but that the bond can be enforced according to its terms, and that if the bond is broader than the terms of the lien statutes, recovery may be had thereon, even though recovery could not be had under the lien statutes. . . ."); *see also Anderson v. Aetna Cas. & Sur. Co.,* 175 S.C. 254, 274, 178 S.E. 819, 826 (1935) ("A bond is nothing more than an agreement or contract under seal to pay money. . . .").[2]

■ Moreover, even assuming *arguendo* that Hard Hat's bond claim is subject to section 29–5–440's notice provisions, we find summary judgment was nevertheless improper because Hard Hat presented evidence creating a genuine issue of material fact as to whether it provided Walker White an adequate notice of furnishing in accordance with the statute.

---

2. The concurring opinion contends we are creating a false dichotomy between payment bonds required by statute and those required by contract alone. The concurrence is entirely correct that the distinctions between statutory and common-law bonds are no longer as relevant to interpreting and enforcing N.Y. State Fin. Law § 137, the law at issue in *Scaccia. See, e.g., A.C. Legnetto Constr., Inc. v. Hartford Fire Ins. Co.,* 92 N.Y.2d 275, 680 N.Y.S.2d 45, 702 N.E.2d 830, 831–32 (1998) (discussing the history behind and development of N.Y. State Fin. Law § 137). New York's State Finance Law § 137 is similar to our section 29–6–250 in that it requires a payment bond to be provided in construction contracts involving a governmental body. *See id.* at 831; N.Y. State Fin. Law § 137 (McKinney 2013). However, neither *Legnetto* nor *Scaccia,* address the type of bond at issue here—one that is voluntarily provided to meet the obligations of a contractual provision, *not* one that is required by statute. We choose to call this type of bond a "common-law" bond under South Carolina law; however, we do not intend to define the term only as used by the New York courts. Rather, in developing our own meanings of statutory and common-law bonds, we merely utilize *Scaccia's* analysis of the mandatory government payment bonds in New York as a starting point.

*See* Rule 56(c), SCRCP. Section 29–5–440 describes the requirements for a notice of furnishing as follows:

Such written notice to the bonded contractor shall be personally served or sent by fax or sent by electronic mail or sent by registered or certified mail, postage prepaid, to the bonded contractor at any place the bonded contractor maintains a permanent office for the conduct of its business, or at the current address as shown on the records of the Department of Labor, Licensing and Regulation.

S.C.Code Ann. § 29–5–440.

We find the three e-mails Hard Hat sent to East of Walker White, at the very least, create an issue of fact as to whether Hard Hat satisfied section 29–5–440's notice provisions. The e-mails were in writing, sent to Walker White as the bonded contractor, and qualified for section 29–5–440's "electronic mail" method of delivery. The circuit court found the e-mails did not meet section 29–5–440's requirements because (1) East read the e-mails in a jobsite trailer rather than Walker White's permanent office, (2) East was not an acceptable level of employee to receive a notice of furnishing, and (3) the e-mails were solicitations for business rather than notices of furnishing. We find the circuit court erred.

First, the circuit court's finding that e-mails must be sent to a "permanent office" ignores the plain language of section 29–5–440. Section 29–5–440 states a notice of furnishing must be sent to a permanent office only when it is delivered via registered or certified mail. Moreover, Hard Hat cannot control the location at which Walker White employees open or read e-mails. An e-mail can be accessed on any computer or wireless device in many different locations. We further find Hard Hat presented evidence that East, as the assistant project manager, was a permissible employee to receive the notice. Schmidt and Byrd both stated East held himself out to be Walker White's project manager. Finally, while the e-mails may have included a component of solicitation, they certainly put Walker White on notice that Hard Hat furnished labor to the project. Among other things, the e-mails stated Hard Hat, "[a]long with helping out on the skilled end ... sent MHS general laborers who have been reporting to the general contractor." The e-mails further stated Hard Hat

"sent Bo 2 laborers" for cleanup and was "working with MHS and helping them set up some of the walk ups."

Accordingly, we find the circuit court erred in granting GAI's motion for summary judgment under Rule 56(c), SCRCP.

## CONCLUSION

We reverse the circuit court's grant of summary judgment in favor of GAI.

**REVERSED.**

KITTREDGE and HEARN, JJ., concur.

PLEICONES, J., concurring in a separate opinion in which BEATTY, J., concurs.

Justice PLEICONES.

I agree that we should reverse the grant of summary judgment but find that S.C.Code Ann. § 29–5–440 (2007) applies, and therefore write separately.

As I read § 29–5–440, it is generally applicable to suits on a payment bond, and no reference to the statute in the bond itself is necessary for the statute's application. The first paragraph defines the parties entitled to bring such a suit, the second paragraph sets forth the procedure by which a remote claimant, who not being a party to the surety contract itself, must give notice to the bonded contractor of his claim. The third paragraph states the statute of limitations, and the fourth defines terms used in the statute. Unlike the majority, I do not find this statute creates a specialized statutory scheme that applies only when the statute is referenced in the bond itself, but rather that it provides the method for a suit on any payment bond. While some payment bonds are required by statute,[3] and others by contract alone, the majority creates a false dichotomy between the two in construing and applying § 29–5–440.

---

**3.** *See e.g.* S.C.Code Ann. § 29–6–250 (2007) (governmental bodies must require payment bonds in certain circumstances).

Hard Hat is the subcontractor of a subcontractor (MHS) of a subcontractor (Walker White) of the general contractor (Edifice). Walker White's contract with Edifice required it to obtain a payment bond. The GAI bond at issue here was obtained by Walker White in satisfaction of that requirement. Hard Hat, although not a party to the GAI bond, has brought suit seeking to recover on the bond after it allegedly did not receive full payment from MHS.

The GAI bond provides that subcontractors "may maintain independent actions upon this bond in their own names." This provision in the GAI bond does nothing more than recognize the statutory right of a remote claimant such as Hard Hat to sue under the bond consistent with paragraph two of § 29–5–440. The GAI bond contains no terms that purport to deny a remote subcontractor the right to recover under it, or to vary the procedures established by § 29–5–440, either in the giving of the notice required under paragraph two or in the statute of limitations contained in paragraph three. We therefore need not decide whether such a limitation or variance would be effective.

In my opinion, the New York case relied upon by the majority is not relevant here. *See Scaccia Concrete Corp. v. Hartford Fire Ins. Co.*, 212 A.D.2d 225, 628 N.Y.S.2d 746 (N.Y.App.Div.1995). Prior to 1985, New York municipalities undertaking public works projects could choose to require a bond containing terms established by a State Finance Law ("statutory bond"), a bond containing different terms ("common law bond") or no bond at all. In 1985 this State Finance Law was amended, and municipalities were obligated to require bonds in all such projects. In *Scaccia*, the post–1985 bond's terms for the giving of notice and for bringing an action were more liberal than those required by the State Finance Law. The issue was whether the contract terms or the statutory terms applied to the suit on the bond. The *Scaccia* court held that when a surety had contracted to provide greater protections to laborers and material men than that required by the statute, this "voluntary bond" could be enforced as a "common law bond." In this case, GAI's bond, while arguably in New York parlance a "common law" bond since it was not required by statute (although it was required by contract),

does not contain any terms that deviate from the statutory requirements found in § 29–5–440.[4] *Scaccia* might be instructive if GAI's bond had purported to vary the notice requirements or the statute of limitations found in § 29–5–440, or to deny a remote claimant such as Hard Hat the right to bring suit, but since there is no conflict between the bond and the statute, I find *Scaccia* inapposite.[5]

Because I agree there are material issues of fact whether Hard Hat complied with the notice requirements of § 29–5–

4. The majority posits that we should utilize *Scaccia* to develop definitions for statutory and common-law bonds. I see no reason to create such definitions solely in order to make this 1995 decision by a New York appellate court appear to be relevant. As the New York Court of Appeals explained in 1998,

> The distinction that plaintiff attempts to draw between "statutory" and "common-law" bonds is rooted in a line of decisions that preceded the 1985 amendment to State Finance Law § 137. Prior to 1985, the statute was permissive rather than mandatory, providing simply that the Comptroller "may nevertheless" have required a bond for State projects. Since the statute was permissive, the question would sometimes arise whether a particular bond was furnished pursuant to section 137, or simply required as part of a contract. If the former were the case, then the bond was labeled a statutory bond and had to be read in conformity with State Finance Law § 137. However, if the bond were found to be a common-law bond required solely by contract, then the more restrictive State Finance Law limitations period was inapplicable (*see generally, Scaccia Concrete Corp. v. Hartford Fire Ins. Co.,* 212 A.D.2d 225, 229–231, 628 N.Y.S.2d 746 (1995)).
>
> . . .
>
> In the context of a statutory scheme that made the procurement of bonds optional, the distinction between common-law and statutory bonds was material and relevant. If the State could choose to do away entirely with a bond, then certainly it could choose to require a bond that did not meet the requirements of State Finance Law § 137. However, once municipalities were required to bond all substantial construction projects, the distinction lost its meaning and effect. *A.C. Legnetto Constr. v. Hartford Fire Ins. Co.,* 92 N.Y.2d 275, 279–280, 702 N.E.2d 830, 831–832, 680 N.Y.S.2d 45, 46–47 (1998).

5. I disagree with the majority's reading of *Scaccia* which leads it to conclude that the GAI's bond's failure to reference the statute "indicates Hard Hat had no duty to comply with Section 29–5–440's notice provisions." In my opinion, *Scaccia* stands for the proposition that the terms of a bond statute are incorporated in the bond unless explicitly disclaimed or varied. Moreover, applying the majority's logic, if a "common law" bond neither specifically mentions § 29–5–440 nor explicitly gives subcontractor's a right of action, then those "remote claimants" cannot sue on the payment bond.

440, I concur in the decision to reverse the circuit court's order.

BEATTY, J., concurs.